**[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 213.]**

OFFICE OF DISCIPLINARY COUNSEL *v*. MANOGG.

**[Cite as *Disciplinary Counsel v. Manogg*, 1996-Ohio-312.]**

*Attorneys at law—Misconduct—Permanent disbarment—Conviction of using false Social Security numbers in violation of Section 408(g)(2), Title 42, U.S. Code—Illegal conduct involving moral turpitude—Conduct involving fraud, deceit, dishonesty, or misrepresentation—Conduct prejudicial to the administration of justice—Conduct that adversely reflects on fitness to practice law—Failure to refuse employment in litigation in which attorney knows that he ought to be called as a witness—Acquisition of interest in client's litigation—Filing suit on client's behalf that attorney knows would merely harass another.*

(No. 94-2669—Submitted September 13, 1995—Decided January 10, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 92-54.

_____

{¶ 1} In a complaint filed on October 19, 1992, relator, Office of Disciplinary Counsel, charged respondent, Philip M. Manogg of Newark, Ohio Attorney Registration No. 0025402, with three counts of professional misconduct involving violations of, *inter alia,* DR 1-102(A)(3) (illegal conduct involving moral turpitude), 1-102(A)(4) (conduct involving fraud, deceit, dishonesty, or misrepresentation), 1-102(A)(5) (conduct prejudicial to the administration of justice), 1-102(A)(6) (conduct that adversely reflects on fitness to practice law), 5-101(B) (failure to refuse employment in litigation in which attorney knows or should know that he ought to be called as a witness), 5-103(A) (acquisition of interest in client's litigation), and 7-102(A)(1) (filing suit on client's behalf that attorney knows would merely harass or injure another). A panel of the Board of

Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on July 8, 1994.

{¶ 2} The panel found that respondent had violated DR 1-102(A)(3), (4), and (6) as alleged in Count I of the complaint. Evidence submitted to substantiate this count established that respondent was convicted on June 19, 1992 of two felony counts of having used false Social Security numbers in violation of Section 408(g)(2),Title 42, U.S. Code. He was sentenced to the maximum permitted by sentencing guidelines--eight months' imprisonment on each count, with the sentences to be served concurrently and followed by three years of supervised release. Respondent was also ordered to perform two hundred hours of community service. On July 30, 1992, respondent was placed on indefinite suspension from the practice of law pursuant to Gov.Bar R. V(5)(A)(3) (automatic suspension for conviction of felony).

{¶ 3} Respondent supplied the false Social Security numbers in 1989 to substantiate aliases in ill-fated attempts to obtain a post office box and to establish a corporate checking account. Respondent apparently concocted the name "Kenneth Wilson" to obtain the post office box, and he posed as a deceased attorney of whom he had heard while practicing in Columbus, Ohio, to deceive the bank. In pronouncing respondent's sentence, the federal district court judge discussed the circumstances surrounding respondent's crimes, stating:

"The basis for this sentence is that it is obvious that the defendant went through some extensive planning in order to put a scheme together; the fact that he had a law degree has raised several additional questions as to how he was really going to get around without being detected. To place this individual on probation would not likely impress him with the seriousness of his actions; [especially] *** considering that he was well aware of the possible consequences of this type of behavior. Apparently through this act [he was] involved in very serious economic

or white collar crime activity which leaves a great many victims with serious financial hardships."

{¶ 4} Evidence before the panel confirmed the federal judge's suspicions of respondent's fraudulent scheming. The investigating agent for the United States Department of Health and Human Services, Office of the Inspector General testified that, in addition to using false Social Security numbers, respondent had produced fabricated pieces of identification when the agent questioned him in connection with the corporate bank account, including an international certification, driver's license, and motor vehicle permit. Respondent checked probate court records to falsify this identification and he had even placed his photograph on some of it to identify himself as the deceased attorney.

{¶ 5} Respondent testified that he used an alias to open the bank account after he became involved with someone, whose name he could not recall, who had set up at least two "contractual" companies outside the United States. According to respondent, this person he could not identify wanted to transfer funds from these companies into this country without encountering adverse tax consequences, so respondent suggested formation of companies or corporations by the same name in the United States, and he opened at least one corporate checking account to accept transfer of the offshore funds. Respondent used the deceased attorney's identity and not his own to open the account because he "wasn't 100% sure what [the unidentified person] was going to do."

{¶ 6} Respondent also testified that he used a fictitious name to request a post office box after learning of some "deal going around" involving "an insurance company or something out of some southern state," which he considered a money-making opportunity. Respondent told the trustee of another "contractual" company, the Wheatley Company, and a farmer who had transferred assets to the Wheatley Company about this "deal" to encourage their participation. According to respondent:

"*** [T]he deal was that if you allowed [the insurance company personnel] to put a mortgage on your real estate that they would give you--let me see how this thing supposedly worked.

"The note you would sign to them would be, like, at eight percent. They would in turn sign a note to you for, like, 10 percent. And I guess the benefit to them [was] their assets would be increased because they would have this mortgage on paper. They could in turn then write additional [insurance] policies. I [have] forgotten what kind of policies they were writing. And I found out about this through a friend of mine, and, you know, the old saying if it sounds too good to be true it probably is.

"*** I talked with *** [the farmer and the trustee]. Did they want to try this thing to have a little bit of income for the Wheatley Company and maybe putting a mortgage on [to] protect some of the assets of the Wheatley Company. And they said *** they'd tried it. Before I told them I would do it, [I said] let's run some fake deals through to see if they accept them.

"*** I didn't want to use my name because this friend of mine obviously knows it came from me, and I wanted to test it. So I ran a couple deals through and they accepted it. Just made up property, and I used this name Kenneth Wilson as a post office drop to have the stuff mailed to.

"And so I tried a couple more just to see. I even tried one at a cemetery and they were going to loan I forget how many millions of dollars on a cemetery. And I said time out. At that point I suggested that the Wheatley Company not do it, and again I used fake ID when I opened the post office box ***."

{¶ 7} In his machinations to "test" the mortgage loan "deal," respondent also made up fake property deeds and appraisals to convince the insurance company that he owned the property. He apparently also obtained a second post office box by identifying himself as the deceased attorney and again using that attorney's

4

Social Security number; however, respondent has not been charged for this incident.

{¶ 8} With respect to the allegations in Count II, the panel found that respondent had violated DR 1-102(A)(5) and (6), and 7-102(A)(1). Evidence submitted to substantiate this count established that respondent represented another "contractual" company, the Bearing Company, in an action to recover certain property and damages and to obtain an injunction before Judge Richard M. Rogers of the Marion County Court of Common Pleas. Respondent ultimately dismissed this suit, and Judge Rogers subsequently sanctioned him on May 21, 1991, pursuant to R.C. 2323.51 and Civ. R. 11 and 37(B) and (D), for instituting a frivolous cause of action designed merely to harass and having no legal basis. In affirming Judge Rogers's judgment, the Court of Appeals for Marion County cited the following examples, among others, of respondent's frivolous conduct: (1) he filed his suit realizing that his client was a sham organization due to his failure to register it as business trust pursuant to the requirements of R.C. Chapter 1746; (2) he made false representations to the trial court concerning his client's business activities and the corresponding need to register it as a business trust; (3) he engaged in retaliatory tactics when defendants in his lawsuit asserted his failure to comply with R.C. Chapter 1746, including the filing of an absolutely groundless motion for default judgment; and (4) he and his client failed to appear for a scheduled deposition without notice or explanation.

{¶ 9} With respect to the allegations in Count III, the panel found respondent had violated DR 5-101(B) and 5-103(A).[1] Evidence submitted to substantiate this count established that respondent defended the Wheatley Company against a creditor's suit in Wyandot County, Ohio, before Judge Robert

---

1. The panel found this violation even though relator suggested at the hearing that it was abandoning prosecution of the alleged misconduct.

D. Walker, formerly of the Hancock County Court of Common Pleas and sitting by assignment. Judge Walker explained to the panel that the Wheatley Company had originally been conceived as a common-law real estate trust and had been created in the West Indies. Judge Walker did not consider use of the term "company" to describe a real estate trust legitimate under Ohio law, see R.C. 1746.06, so he apparently dismissed the Wheatley Company as a party. In response, respondent evidently registered the Wheatley Company as an Ohio corporation, appointing himself as the corporation's president, and re-entered the suit, which by then included various cross-claims. Judge Walker subsequently disqualified respondent from acting as counsel for the Wheatley Company on June 3, 1991 due to his proprietary interest and probable participation as a witness. Judge Walker described respondent's conduct as "[a] blatant abuse of process."

{¶ 10} Before recommending a sanction for this misconduct, the panel reviewed the record for mitigating evidence, but found none. The panel was struck by respondent's inability to recognize the gravity of his wrongdoing, as well as his complete lack of candor and remorse. The panel also noted that respondent was evasive, at times obstructive, and often needlessly litigious throughout the disciplinary proceeding. Thus, the panel recommended the sanction suggested by relator--that respondent be permanently disbarred from the practice of law.

{¶ 11} The board adopted the panel's report, including its findings of fact, conclusions of law, and recommendation of permanent disbarment.

_____

*Geoffrey Stern*, Disciplinary Counsel, and *Sally Ann Steuk*, Assistant Disciplinary Counsel, for relator.

*Philip M. Manogg*, *pro se*.

_____

**Per Curiam.**

{¶ 12} In his objections to the board's report, respondent first argues a denial of due process because he was not permitted to dispute the factual and legal findings of Judges Rogers and Walker. Respondent also complains that he was permitted only an hour or so to show that his disqualification and sanction did not rise to the level of professional misconduct. We reject these arguments because respondent cites no authority to suggest that an unfettered opportunity to collaterally attack final court orders is constitutionally required in disciplinary proceedings.

{¶ 13} Respondent also takes issue with many of the board's findings of fact pertaining to the allegations of his misconduct in court; however, these infractions are hardly our main concern. We are most troubled, as was the panel and board, by respondent's propensity to scheme and deceive without any moral appreciation for the lies he tells or the fraud he perpetrates. Indeed, we find respondent's testimony and conduct as manifested in this record so duplicitous that we cannot credit even the representations he offers to support his objections. His objections are, therefore, overruled.

{¶ 14} Upon review of the record, we concur in the board's findings that respondent violated DR 1-102(A)(3), (4), (5), and (6) as alleged in Counts I and II of the complaint. We also fully agree that the final orders issued by Judges Rogers and Walker, together with the testimony of both judges, provided ample credible evidence that respondent violated DR 5-101(B), 5-103(A), and 7-102(A)(1). Finally, we concur that respondent's misconduct warrants the sanction of permanent disbarment. Respondent is, therefore, ordered permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____