CLEVELAND BAR ASSOCIATION *v.* FATICA.

[Cite as Cleveland Bar Assn. v. Fatica (1971),
28 Ohio St. 2d 40.]

(No. D. D. 71-5—Decided November 3, 1971.)

42

*Mr. William A. Klein, Mr. Thomas P. Meaney, Jr.,* and *Mr. Gordon T. Canning,* for relator.
*Mr. George H. Faust,* for respondent.

*Per Curiam.* While formally conceding that his "conviction of a crime involving moral turpitude" (Rule XVIII [5] [a], Rules of Practice of this court) requires some disciplinary action, it is asserted on behalf of respondent that his actions constituted merely a "mistake in judgment" warranting only a public reprimand.

The testimony heard by the panel consisted essentially of witnesses as to respondent's good character, both before and after 1964; the testimony of a psychologist who tested respondent just prior to the hearing and who expressed the opinion that respondent "asserts to be a person of good character" and "does not present as a person with a character defect"; and the testimony of respondent himself.

Basically, the testimony of respondent, as well as that of his character witnesses, portrays a person of exemplary qualities, who made a single unfortunate mistake,

who has paid his debt to society therefor, and who should not be further punished by disbarment from the practice of law.

The concept of disbarment is that it is not a matter of punishment to the individual so involved. Essentially, considerations of public protection and the good name of an ancient and honored profession are involved.

While conviction of a crime involving moral turpitude does not automatically require permanent disbarment, but may under some circumstances warrant only the lesser penalty of indefinite suspension, we know of no case where such a conviction has been followed by a mere public reprimand by this court. See Lawyer Discipline: The Ohio Story, by Professor Oliver Schroeder, Jr., wherein our disciplinary cases are digested and summarized.

Moreover, the degree of "moral turpitude" is of vital concern in evaluating the damage done to the public confidence so essential to a working interrelationship between the bench, the bar, and the public.

From a careful review of the evidence it appears that, even now, respondent either does not fully appreciate or fails to acknowledge the extent to which he violated basic principles of professional conduct. He still insists that his relationship to Stassis was merely that of attorney and client, and that if only he had had the opportunity of another council meeting, after February 18, 1964, he could have "revealed his position on representing of Stassis to council."

A civilized society cannot long remain without implicit confidence in those who occupy responsible positions of public trust, including both public officials, and members of the bar who are "officers of the court." The solicitation and acceptance of a bribe by such a person is, by its very nature, so serious as to warrant, if not to compel, permanent removal from such a position of trust.

The General Assembly has prescribed disqualification from "public office or appointment under this state" for all persons convicted of a violation of R. C. 2917.01. Thus

respondent may never again occupy public office regardless of whether he has otherwise "paid his debt to society" by meeting the terms of his probation, and regardless of "rehabilitation."

While such disqualification from public office is not binding on this court in imposing discipline upon attorneys, the same considerations, except in the most unusual circumstances, should impel this court to permanently disbar those convicted of soliciting and accepting bribes to influence their public duties.

Applying those considerations to this case, the report of the board is confirmed, and judgment is rendered permanently disbarring respondent from the practice of law.

*Report confirmed and judgment accordingly.*

O'NEILL, C. J., SCHNEIDER, HERBERT. DUNCAN, STERN and LEACH, JJ., concur.

CORRIGAN, J., not participating.