CINCINNATI BAR ASSOCIATION *v.* FARRELL.

[Cite as *Cincinnati Bar Assn. v. Farrell,*
119 Ohio St.3d 529, 2008-Ohio-4540.]

(No. 2007–2395—Submitted March 26, 2008—Decided September 16, 2008.)

**Per Curiam.**

{¶ 1} Respondent, William I. Farrell of Cincinnati, Ohio, Attorney Registration No. 0043635, was admitted to the practice of law in Ohio in 1989. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years, staying the last year of the suspension on conditions, based on findings that he fabricated documents and also forged a signature to obtain a loan. We agree that respondent violated the Code of Professional Responsibility as found by the board and that the recommended sanction is appropriate.

{¶ 2} Relator, Cincinnati Bar Association, filed a complaint charging respondent with violations of DR 1–102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). A panel of three board members heard the case and considered the evidence, including the parties' stipulations of fact and misconduct and joint proposal for a one-year suspension, stayed on the condition of respondent's continued mental-health treatment. The panel found the cited Disciplinary Rule violations, but recommended a two-year suspension with one year stayed on conditions, including continued mental-health treatment and probation. The board adopted the panel's findings of misconduct and its recommendation.

{¶ 3} Respondent has objected to the board's recommendation, arguing that his ethical breaches do not warrant such a severe sanction. He claims that whatever length of suspension is imposed, the sanction should be completely stayed in accordance with the proposed sanction of the parties, precedent, and the strength of the mitigating evidence. On review, we overrule the objection, adopt the board's findings of misconduct, and accept the recommendation for a two-year suspension with one year stayed on the remedial conditions.

## Misconduct

{¶ 4} Since his admission to practice, respondent has worked in a small law firm, developing expertise in workers' compensation and Social Security disability law. In early 1997, respondent became a partner in the firm, which continued in practice as Finkelmeier and Farrell. As of the panel hearing, respondent was still practicing with his firm.

{¶ 5} Though content in his practice at Finkelmeier and Farrell, respondent and his wife realized that his income from the firm alone would not sustain their affluent lifestyle. His wife, also a practicing lawyer, mentioned sometime during 2004 her desire to cut back her work schedule to spend more time with their young daughter, and she suggested that the family move to smaller quarters. Respondent promised instead to obtain more lucrative employment. But rather than actually quit his law firm, respondent merely pretended to have found another job.

{¶ 6} To that end, respondent fabricated a letter dated December 10, 2004, purporting to be a job offer from the chief operating officer of Sheakley Uniservice, Inc. The letter, written on what appeared to be the corporation's letterhead, specified a job title of assistant general counsel, a $150,000 annual salary, an incentive-pay package, and various health insurance and other benefits. Respondent presented the fabricated letter to his wife to show that he had another job.

{¶ 7} Respondent fabricated another letter, dated June 13, 2005, purporting to be a job offer from the director of risk management for the Kroger Company. The letter specified a job title of assistant director of risk management, a $168,000 annual salary, an incentive-pay package, and various health-insurance and other benefits. Respondent also presented this letter to his wife, and because of it, she resigned her position as a senior associate in a law firm, leaving a job that paid an annual salary of about $100,000.

{¶ 8} Respondent had hoped to increase the income from his practice enough to sustain his family, but by March 2006, he needed money. Respondent forged his wife's signature on a power of attorney, intending to use the document to obtain a $50,000 increase in their line of credit. Then, to secure the necessary notarization on the power of attorney, respondent lied about the authenticity of the forged signature to the attorney he asked to notarize it. That lawyer notarized the false signature.[1]

{¶ 9} With the forged power of attorney, respondent borrowed an additional $50,000 on a line of credit, secured by his family's home, from Fifth Third Bank.

---

1. We publicly reprimanded the lawyer in *Cincinnati Bar Assn. v. Gottesman*, 115 Ohio St.3d 222, 2007-Ohio-4791, 874 N.E.2d 778.

His wife later happened upon a bank statement and questioned him about the extension of credit. To quell her suspicions, respondent fabricated three more letters, all dated May 5, 2006, and purporting to be written on Fifth Third letterhead.

{¶ 10} The first letter purported to be from the bank's executive vice-president of retail banking operations; the second purported to be from the bank's general counsel, executive vice-president, and corporate secretary; and the third purported to be from the bank's president and chief executive. Respondent addressed each letter to himself and his wife, and in each supposedly redressed some issue with one or another of the couple's bank accounts. The letters, all at least one page long, specified in great detail how the $75,000 credit limit had resulted from a "counterfeit" equity line of credit and how the discrepancies had been or were being remedied. None of these elaborate explanations was true.

{¶ 11} The bank letters temporarily allayed respondent's wife's concerns about the increase in their credit line. To keep her in the dark, respondent next stopped mail delivery to their home. His wife soon noticed that they were not getting mail, and respondent fabricated another letter, this one purporting to be from the United States Postal Service on post office letterhead. With this letter, dated May 19, 2006, an assistant director of internal investigations supposedly assured the couple that their mail had not been held or diverted in the last year.

{¶ 12} Respondent eventually revealed his duplicity to his wife, and in December 2006, the couple divorced. Respondent's divorce decree requires that respondent repay the $75,000 line of credit from his funds or from the sale of the former couple's home. As of the oral argument in this case, the debt remained outstanding.

{¶ 13} At the urging of his wife's attorney, respondent reported his fabrications and forgery to relator. He has stipulated that he acted illegally in procuring a loan based on false information, see R.C. 2921.13(A)(8) (providing false information to obtain a loan is a misdemeanor of the first degree), and thereby violated DR 1–102(A)(3). He also stipulated that he had acted deceitfully, in violation of DR 1–102(A)(4). We accept these stipulations and the board's findings as to this misconduct.

## Sanction

{¶ 14} "When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases." *Cleveland Bar Assn. v. Norton*, 116 Ohio St.3d 226, 2007-Ohio-6038, 877 N.E.2d 964, ¶ 18. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on

Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993; *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case involves "unique facts and circumstances," BCGD Proc.Reg. 10(A), we are not limited to the factors specified in the rule and may take into account "all relevant factors" in determining which sanction to impose. BCGD Proc.Reg. 10(B).

*A. Duties Violated, Injury, Mental State, and Case Law*

{¶ 15} With his illegal act in violation of DR 1–102(A)(3), respondent breached his duty to the public, the legal profession, and the judicial system to obey the law. This breach "lessens public confidence in the legal profession because obedience to the law exemplifies respect for the law." *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670. With his fabrications, respondent violated his duty to act with the integrity that a member of the legal profession must exhibit. Indeed, when a lawyer tried to persuade an insurance company to settle by inventing portions of a nonexistent court transcript in which a tortfeasor supposedly admitted fault for an auto accident, we said:

{¶ 16} "Lawyers who choose to engage in fabrication of evidence, deceit, misrepresentation of facts, and distortion of truth do so at their peril. They are admonished that the practice of law is not a right, and our code of professional responsibility demands far more of those in our profession." *Cleveland Bar Assn. v. McMahon*, 114 Ohio St.3d 331, 2007-Ohio-3673, 872 N.E.2d 261, ¶ 29.

{¶ 17} Respondent's misconduct also caused much harm. Over a period of 18 months, respondent wove a web of deception, fictitiously composing in meticulous detail two letters about job offers from actual companies, a supposedly official letter assuring the recipients of proper mail service, and three letters about a bank's efforts to remedy credit "fraud" that in fact respondent had perpetrated through a forged power of attorney. By doing so, respondent not only deceived his spouse, he also played upon the trust of the attorney who falsely notarized the power of attorney, drawing that attorney into the disciplinary process. Respondent then used the forgery to dupe a bank into lending him $50,000, a loan that is now at risk for his inability to repay it.

{¶ 18} As to his mental state, respondent admitted having intentionally forged his wife's signature and fabricated the six letters in evidence. He has no explanation for what he describes as his bizarre and uncharacteristic behavior, except to say that he had lied to avoid losing his wife and their daughter. The parties do not dispute that respondent suffered from a depressive disorder during the months in which he committed his ethical breaches; however, respondent

concedes that the depression did not contribute to cause his duplicity. Absent this evidence, we can only conclude from the facts before us that respondent engaged in a "deliberate effort to deceive" others with his fabrications and forgery. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 13.

{¶ 19} Respondent acknowledges our statement in *Columbus Bar Assn. v. Stubbs*, 109 Ohio St.3d 446, 2006-Ohio-2818, 848 N.E.2d 843, ¶ 11, that "[i]llegal and dishonest conduct on the part of an attorney is always troubling and usually warrants an actual suspension from the practice of law." Yet as respondent observes, *Stubbs* is an exception to that rule. There, we issued a six-month stayed suspension to a lawyer who, after receiving a traffic citation, falsified a document to show the Bureau of Motor Vehicles that she had automobile insurance. She also failed to appear for trial when charged with falsification and to pay fines after pleading guilty. Id. at ¶ 4.

{¶ 20} The lawyer in *Stubbs* engaged in but a single dishonest act in violation of DR 1–102(A)(4). The misconduct in that case thus bears little resemblance to this situation, in which respondent has engaged in multiple acts of duplicity. Moreover, with her lack of any prior disciplinary record, remorse, cooperation throughout the disciplinary process, and other mitigating attributes, including a depressive condition as defined by BCGD Proc.Reg. 10(B)(2)(g) that did contribute to cause her misconduct, the lawyer in *Stubbs* convinced us that she would not commit a similar ethical infraction again. In contrast, respondent cannot explain his fabrications and forgery, so we have nothing from which to conclude that he will not repeat his wrongdoing.

{¶ 21} When a lawyer plans and administers "a multistep process to defraud" those entitled to rely on the validity of documents, the violation of DR 1–102(A)(4) warrants an actual suspension from the practice of law. *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429, ¶ 13. A lawyer's "[r]epeated or continuous attempts to mislead" fall into the same category. *Disciplinary Counsel v. DeLong*, 98 Ohio St.3d 470, 2003-Ohio-1743, 786 N.E.2d 1280, ¶ 8. And contrary to respondent's implication, a course of deceitful conduct is hardly made more tolerable because it did not victimize a client or occur in court. *Cleveland Bar Assn. v. McMahon*, 114 Ohio St.3d 331, 2007-Ohio-3673, 872 N.E.2d 261, ¶ 23. Thus, for respondent's "continuing course of deceit and misrepresentation designed to cover up" wrongdoing, a period of actual suspension is appropriate. *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237.

### B. Aggravating and Mitigating Factors

{¶ 22} The mitigating effect of respondent's having no prior disciplinary record, his cooperation during the disciplinary proceedings, see BCGD Proc.Reg.

10(B)(2)(a) and (e), and the remorse he insists he has shown are not enough to warrant leniency. Self-interest motivated respondent's fabrications and forgery, he engaged in a pattern of misconduct and committed multiple offenses, and he has not made restitution by paying off the unauthorized extension of credit. See BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (i). Moreover, respondent did not present evidence of his good character and reputation, a mitigating factor under BCGD Proc.Reg. 10(B)(2)(e), nor did he prove that his mental disability contributed to cause his misconduct, documentation that BCGD Proc.Reg. 10(B)(2)(g) requires for mitigating effect.

## C. Conclusion

{¶ 23} Having found that respondent violated DR 1–102(A)(3) and (4), that an actual suspension is warranted for this misconduct, and that the balance of mitigating and aggravating factors does not weigh in his favor, we accept the sanction recommended by the board. We hereby suspend respondent from the practice of law in Ohio for two years. The second year of the suspension period will be stayed on the conditions that respondent (1) comply with the terms of the Ohio Lawyer's Assistance Program ("OLAP") he entered on February 26, 2007, (2) successfully complete a term of probation pursuant to Gov.Bar R. V(9), effective until the expiration of his OLAP contract, and (3) commit no further violations of the Disciplinary Rules. If respondent violates the terms of the stay or probation, the stay will be lifted, and respondent shall serve the entire two-year suspension.

{¶ 24} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

---

Ernest F. McAdams Jr. and Kevin P. Roberts, for relator.

John J. Mueller, L.L.C., and John J. Mueller, for respondent.