CINCINNATI BAR ASSOCIATION *v.* FARRELL.

[Cite as *Cincinnati Bar Assn. v. Farrell,* 129 Ohio St.3d 223, 2011-Ohio-2879.]

*Attorney — Misconduct — Engaging in an illegal act that reflects adversely on the lawyer's honesty or trustworthiness — Conduct adversely reflecting on fitness to practice law — Permanent disbarment.*

(No. 2010-1951 — Submitted February 15, 2011 — Decided June 21, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-002.

_____

**Per Curiam**.

{¶ 1} Respondent, William I. Farrell of Cincinnati, Ohio, Attorney Registration No. 0043635, was admitted to the practice of law in Ohio in 1989.

{¶ 2} On March 26, 2008, we suspended respondent from the practice of law for two years, with the second year stayed on conditions, based on findings that he had fabricated documents, forged his wife's signature to a power of attorney, lied to secure the notarization of the power of attorney, and then used the forged document to obtain credit. *Cincinnati Bar Assn. v. Farrell*, 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800, ¶ 6-10, 23.

{¶ 3} On January 9 and 16, 2008, respondent's counsel informed relator, Cincinnati Bar Association, that respondent had failed to timely file federal, state, or local income tax returns or pay the corresponding tax liabilities for himself or his former wife for the years 2001 through 2005. He also reported that respondent had failed to file his individual tax returns or pay the corresponding tax liability for 2006. The first of these revelations came less than three weeks after the Board of Commissioners had certified its report to this court in respondent's first disciplinary matter.

**{¶ 4}** On February 17, 2009, relator filed a complaint alleging that respondent had (1) failed to file tax returns or pay the corresponding tax liabilities for the tax years 2001 through 2005, (2) filed a false affidavit with the Hamilton County Domestic Relations Court in December 2007 stating that he had timely filed those returns and paid the corresponding taxes for himself and his wife, and (3) failed to file his 2006 individual income tax returns or pay any corresponding tax liability as required by the couple's divorce decree.

**{¶ 5}** Although the panel recognized that "respondent acted with a premeditated intent to deceive the Domestic Relations Court, with extraordinary self interest, and in utter disregard for his ethical obligations as an attorney and officer of the court," two of the three members recommended that respondent be indefinitely suspended from the practice of law. Citing respondent's systematic manipulation of the disciplinary process to avoid the consequences of his misconduct, the third member of the panel recommended that he be permanently disbarred. The board adopted the panel's findings of fact and misconduct but adopted the dissenting panel member's recommendation that respondent be permanently disbarred from the practice of law in Ohio.

**{¶ 6}** Respondent objects to the recommended sanction, arguing that our precedent supports, at most, the indefinite suspension recommended by a majority of the panel. For the reasons that follow, we overrule respondent's objection, adopt the board's findings of fact and misconduct, and permanently disbar respondent from the practice of law in Ohio.

## Misconduct

**{¶ 7}** Respondent's misconduct began in 2002 when he stopped filing income tax returns and making regular estimated payments toward his income tax liability. In mid-2004, two years after his tax violations began, respondent's wife wanted to reduce her work schedule and move to a more modest home so that she could stay home with their daughter. Respondent testified that he felt that his

position as a husband and father was threatened by his wife's request and that he believed the marriage was foundering, and he claimed that his panic led him into a pattern of deception.

{¶ 8} Rather than address the issues in his marriage, respondent devised a scheme to convince his wife that he had resigned his position with his firm to accept more lucrative employment, thus buying time for his practice to become more lucrative. In furtherance of this scheme, respondent fabricated letters from two phantom employers, indicating that each had hired him for a higher salary, a bigger bonus, and better benefits. In reliance on the second of these purported job offers, respondent's wife resigned her position as a senior associate with a Cincinnati law firm.

{¶ 9} Unable to sustain the financial burdens arising from his deception, respondent forged his wife's signature to a power of attorney, convinced another attorney to notarize the forged signature, and unbeknownst to his wife, used the power of attorney to obtain a $50,000 extension of the couple's line of credit. When his wife discovered documents related to the increased line of credit, respondent fabricated three letters from bank executives explaining that the bank had erred. He also stopped delivery of mail to his home and fabricated a letter from the United States Postal Service stating that no mail had been withheld from delivery. Respondent eventually informed his wife about the fictitious offers of employment, the forged power of attorney that he had used to extend the marital line of credit, and his efforts to conceal these deceptions. The couple divorced in December 2006.

{¶ 10} At the November 15, 2007 panel hearing addressing respondent's fraud, relator asked respondent, "At one time do you recall your wife questioning you about some unpaid income taxes?" Respondent replied, "She advised me that she received a letter from the IRS addressed to her that said that they did not have copies of returns, but did not mention – I'm not aware of anything regarding

unpaid taxes." In light of respondent's admission that he did not file tax returns or pay taxes for the 2001 through 2006 tax years, this testimony was patently false.

{¶ 11} Just one month after giving this false testimony at his disciplinary hearing, respondent filed an affidavit in response to a postdecree contempt motion filed in his domestic-relations case. The affidavit stated that he had prepared and filed joint federal, state, and local income tax returns and had paid the corresponding tax liabilities in full for the 1989 through 2005 tax years. Respondent admitted that he knew these averments were false when he made them but explained that he did not want to risk being jailed for contempt if he failed to file an affidavit or risk the imposition of a harsher sanction in his pending disciplinary matter if the truth came out.

{¶ 12} When respondent's domestic-relations counsel discovered that the affidavit was false, he advised respondent to report his conduct to relator. And in an amended answer to relator's complaint, respondent admitted each allegation set forth in relator's complaint and acknowledged that his conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), (c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and (h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 13} Based upon respondent's admissions of fact and misconduct, and upon the evidence presented at the hearing, the panel and board found that respondent has violated Prof.Cond.R. 8.4(b), (c), (d), and (h). We adopt these findings of fact and misconduct.

**Sanction**

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 15}** As aggravating factors, the panel found that respondent has a prior disciplinary record and that his current ethical violations occurred during that earlier disciplinary process. See BCGD Proc.Reg. 10(B)(1)(a). The board also found that he engaged in a pattern of misconduct, submitted false evidence and made false statements about his outstanding tax liabilities in his prior disciplinary case and in his domestic-relations proceeding, and failed to acknowledge the wrongful nature of his conduct until confronted by his attorney. See BCGD Proc.Reg. 10(B)(1)(c), (f), and (g). We find that respondent also acted with a dishonest or selfish motive, disregarded his ethical obligations as an attorney and officer of this court, and risked his wife's reputation, credit, and career in an effort to avoid the consequences of his own actions. See BCGD Proc.Reg. 10(B)(1)(b). We also find that he engaged in multiple offenses over a period of years. See BCGD Proc.Reg. 10(B)(1)(d).

**{¶ 16}** As mitigating factors, the panel found that respondent had cooperated in the disciplinary proceedings and eventually admitted each of the alleged rule violations. BCGD Proc.Reg. 10(B)(2)(c) and (d).

**{¶ 17}** The panel, however, discounted the testimony of three of respondent's law-school classmates who testified to his good character, two of whom claimed that they would continue to refer clients to him despite his

disciplinary record. The panel acknowledged respondent's selfless efforts to obtain workers' compensation benefits for one of the witnesses, who had been in an automobile accident that left him a quadriplegic. But it observed that he began the pattern of tax-law violations that gave rise to this disciplinary proceeding while he was providing free legal advice to his friend.

{¶ 18} In his prior disciplinary proceeding, respondent acknowledged that he had suffered from a depressive disorder, but he conceded that his depression did not contribute to his misconduct in that case. *Cincinnati Bar Assn. v. Farrell*, 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800, ¶ 18. Here, however, he testified that his depression, though not a cause, was a contributing factor to all of his misconduct, and he sought to have it considered as a mitigating factor.

{¶ 19} The social worker who began treating respondent in 2006 testified that respondent suffered from major depression. He considered respondent's filing of the false tax affidavit as a continuation of the conduct at issue in the earlier disciplinary proceeding and characterized the misconduct as occurring in "a very encapsulated part" of respondent's life involving his marriage and as unrelated to his clients or his career. While the social worker believed that respondent's depression was causally related to the misconduct at issue, he stated that respondent took responsibility for his problems and expressed tremendous guilt and shame for his actions. He also expressed his belief that respondent would be able to return to the ethical practice of law. The panel did not find the social worker's testimony persuasive.

{¶ 20} The board-certified psychiatrist who performed an independent medical examination of respondent confirmed that respondent had suffered from a major depressive disorder. But based upon respondent's self-reported history and the documentation in his clinical records, the psychiatrist found that his depression had been in remission since early 2007. Therefore, the independent

psychiatrist concluded that respondent's depression was not causally related to the misconduct that occurred in late 2007.

{¶ 21} The panel found the testimony of the independent psychiatrist to be more persuasive than that of respondent's treating social worker. Indeed, observing that respondent attempts to attribute his misconduct to his panic – over his wife's discovery of his deception in the first case and over the potential loss of a lenient sanction in the second – the panel found "his mental state to be nothing less than a carefully crafted effort to deceive" and accorded it no mitigating effect. See BCGD Proc.Reg. 10(B)(2)(g).

{¶ 22} The panel likewise rejected respondent's claims that he had reported his conduct, observing that in each instance, he made his report only after his misdeeds had been discovered. Finding that respondent had engaged in a six-year pattern of pathological lying and deceptive conduct, acted with a premeditated intent to deceive the domestic-relations court, and submitted false testimony to another panel of the Board of Commissioners on Grievances and Discipline, which serves as an arm of this court, the panel rejected respondent's claims that his conduct had no bearing on his ethical obligations as an attorney.

{¶ 23} Finding that this court has imposed sanctions ranging from a six-month suspension to an indefinite suspension for what they perceived as comparable conduct, two of the panel members were reluctant to permanently disbar respondent as relator requested. But they acknowledged that they could not confidently establish a time frame in which respondent could return to the ethical practice of law and, therefore, recommended that he be indefinitely suspended after serving the full suspension imposed by this court in 2008. The majority of the panel also conditioned any future reinstatement on the submission of evidence that respondent has repaid the $50,000 loan that he fraudulently obtained, is current on all tax and child-support obligations, and has committed no further misconduct.

**{¶ 24}** Citing his six-year pattern of deception and systematic manipulation of the disciplinary process to avoid the consequences of his misconduct, the third panel member dissented, arguing that respondent's conduct warranted permanent disbarment. The board adopted the findings of fact and misconduct of the panel but recommends that we permanently disbar respondent.

**{¶ 25}** Respondent objects to the recommended sanction of permanent disbarment and argues that at most, our precedent supports the imposition of an indefinite suspension. In support of this argument, he cites a number of cases imposing far more lenient sanctions on attorneys who failed to file their personal income tax returns.

**{¶ 26}** In *Toledo Bar Assn. v. Abood*, 104 Ohio St.3d 655, 2004-Ohio-7015, 821 N.E.2d 560, ¶ 3, an attorney failed to either timely file his federal income tax returns or pay the tax owed for multiple years over a 13-year period due to financial difficulties. And on one occasion, he placed personal funds into his client trust account to avoid seizure by the Internal Revenue Service ("IRS"). He pleaded guilty to two misdemeanor counts of failure to pay income taxes and was sentenced to consecutive eight-month prison terms for the offenses. Id. at ¶ 5.

**{¶ 27}** In *Abood*, we noted the presence of many mitigating factors, including the respondent's lack of a prior disciplinary record, his full cooperation with the IRS and disciplinary investigations, his reputation for honesty, integrity and a good work ethic, his demonstration of remorse, the imposition of a substantial federal prison term, and the fact that his misconduct was of a financial nature that did not involve his practice or his capacity as an attorney. Id. at ¶ 9-11. Considering the duration of the respondent's conduct as an aggravating circumstance, however, we imposed a one-year suspension and stayed the final six months on conditions. Id. at ¶ 19-20.

**{¶ 28}** In *Cleveland Bar Assn. v. Smith*, 102 Ohio St.3d 10, 2004-Ohio-1582, 806 N.E.2d 495, ¶ 12, we imposed a six-month conditionally stayed suspension on an attorney who had settled a claim for her own malpractice without advising the client to seek independent counsel, failed to promptly return unearned fees to a client, and failed to file income tax returns for nine years. There were no aggravating factors present, but mitigating factors included respondent's lack of prior discipline, her devotion of her practice to low- and moderate-income clients, her genuine efforts to make restitution to her clients, her acceptance of responsibility for her actions and demonstration of remorse, and her evidence of her good character and integrity. Id. at ¶ 10.

**{¶ 29}** In *Cuyahoga Cty. Bar Assn. v. Freedman*, 107 Ohio St.3d 25, 2005-Ohio-5831, 836 N.E.2d 559, ¶ 10, 19, we imposed a one-year suspension on an attorney who had not filed tax returns for at least ten years and owed approximately $200,000 in back taxes. He had also harmed two clients by neglecting their legal matters and counseled one of them to hide her car from her creditors. Id. at ¶ 4-9. Mitigating factors included the absence of any prior disciplinary record, the absence of a dishonest or selfish motive, full and free disclosure to the panel and a cooperative attitude during the proceedings, and respondent's good character and reputation among magistrates, attorneys, clients, and friends. Id. at ¶ 13. Freedman also successfully demonstrated that his diagnosed depression was causally related to his misconduct and that he had completed a sustained period of successful treatment, and his counselor testified that he was capable of providing ethical and professional service to his clients. Id. at ¶ 14.

**{¶ 30}** We have also imposed a one-year conditionally stayed suspension on an attorney who had accepted cocaine as a legal fee from a client and had failed to file personal income tax returns for five years. *Cuyahoga Cty. Bar Assn. v. Lazzaro*, 98 Ohio St.3d 509, 2003-Ohio-2150, 787 N.E.2d 1182, ¶ 2, 7.

Notably, in that case, the attorney had no prior discipline, and his diagnosed depressive disorder and cocaine dependence qualified as a mitigating circumstance pursuant to BCGD Proc.Reg. 10(B)(2)(g). Id. at ¶ 3.

{¶ 31} And in *Columbus Bar Assn. v. Patterson*, 95 Ohio St.3d 502, 2002-Ohio-2487, 769 N.E.2d 826, ¶ 4-7, we imposed a one-year suspension with credit for time served on an attorney who had pleaded guilty to two misdemeanor charges of failing to file federal income tax returns and one charge of driving while intoxicated, and who owed more than $45,000 in child support. As mitigating factors, the parties stipulated and we found that the attorney's violations did not directly relate to the practice of law and did not adversely affect his clients or the judicial system and that the attorney had been criminally punished for his conduct.

{¶ 32} These cases, however, are distinguishable from the facts of respondent's case. In four of the five cases, the attorneys did not have a prior disciplinary record, while respondent's pattern of misconduct continued throughout his prior disciplinary proceeding. Abood served a prison term for his offenses, and Patterson was placed on probation by the federal court, while respondent has not faced any criminal charges for his conduct. Freedman and Lazzaro successfully demonstrated that their mental conditions contributed to their misconduct and satisfied the other requirements of BCGD Proc.Reg. 10(B)(2)(g) for those conditions to be considered in mitigation, while respondent's depression appears to be the result, rather than the cause, of his misconduct.

{¶ 33} Respondent's submission of a false affidavit in his domestic proceeding and his false testimony in his prior disciplinary proceeding were prejudicial to the administration of justice and adversely reflected upon his fitness to practice law. His actions impaired this court's ability to determine the full scope of his misconduct and craft an appropriate sanction to protect the public.

And while Abood and Smith expressed genuine remorse for their actions, respondent continued to spin his web of lies even as he professed his remorse in his first disciplinary action and as he continues to seek credit for reporting his misconduct.

{¶ 34} We have permanently disbarred attorneys who have demonstrated a proclivity for lying and deceit. In *Cincinnati Bar Assn. v. Deaton*, 102 Ohio St.3d 19, 2004-Ohio-1587, 806 N.E.2d 503, ¶ 3-22, an attorney had repeatedly lied and deceived his clients and his firm to cover up his neglect of client matters. Observing that the attorney had deliberately concealed his neglect to protect his personal interests, and adopting a master commissioner's finding that the attorney was predisposed to dishonesty and was lacking in integrity, we concluded that an indefinite suspension was too lenient. Id. at ¶ 27, 30. Therefore, we permanently disbarred the attorney. Id. at ¶ 32.

{¶ 35} Similarly, in *Disciplinary Counsel v. Manogg* (1996), 74 Ohio St.3d 213, 214-216, 658 N.E.2d 257, we permanently disbarred an attorney who had been convicted of two felony counts of using false Social Security numbers, had created several aliases, and had made up fake property deeds and appraisals to obtain fraudulent mortgage loans. In doing so, we stated that we were "most troubled * * * by respondent's propensity to scheme and deceive without any moral appreciation for the lies he tells or the fraud he perpetrates." Id. at 217. And in *Trumbull Cty. Bar Assn. v. Kafantaris*, 121 Ohio St.3d 387, 2009-Ohio-1389, 904 N.E.2d 875, ¶ 6-7, 15, we found that permanent disbarment was the only appropriate sanction for an attorney who, among other things, submitted an affidavit to this court falsely stating that he had complied with the terms of a previous suspension order. Likewise, we agree that respondent's pattern of lying and deceit strongly suggests that he lacks the ability to conform his behavior to the ethical standards incumbent upon attorneys in this state.

**{¶ 36}** Accordingly, respondent is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Kevin P. Roberts and Ernest F. McAdams Jr., for relator.

William I. Farrell, pro se.

_____