DISCIPLINARY COUNSEL *v.* LAWSON.

[Cite as *Disciplinary Counsel v. Lawson,*

130 Ohio St.3d 184, 2011-Ohio-4673.]

*Attorneys—Misconduct—Felony conviction for conspiracy to obtain Schedule II drugs by deception—Advising client to engage in illegal activity—Prior disciplinary violations—Permanent disbarment.*

(No. 2011-0131—Submitted May 25, 2011—Decided September 20, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-098.

_____

**Per Curiam.**

{¶ 1} Respondent, Kenneth L. Lawson, Attorney Registration No. 0042468, was admitted to the practice of law in Ohio in 1989. In 2007, pursuant to Gov.Bar R. V(5a), this court ordered an interim remedial suspension against respondent, pending final disposition of disciplinary proceedings based on multiple instances of professional misconduct. *Disciplinary Counsel v. Lawson*, 113 Ohio St.3d 1508, 2007-Ohio-2333, 866 N.E.2d 508.

{¶ 2} On July 9, 2008, this court ordered respondent indefinitely suspended, finding that he had neglected and failed to properly represent 15 clients, failed to return unearned fees, stole settlement funds from six clients, misused his IOLTA account to conceal his personal funds from creditors, failed to cooperate in numerous grievance investigations, and made repeated dishonest statements to clients and relator during investigation of these matters. *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749.

**{¶ 3}** On December 7, 2009, a second disciplinary complaint was filed against respondent, alleging that in August 2003, respondent entered into a conspiracy with Dr. Walter Broadnax and George Beatty to obtain Schedule II prescription drugs by deception. Relator recommended that respondent be permanently disbarred. Respondent recommended dismissal or a second indefinite suspension. The Board of Commissioners on Grievances and Discipline concluded that respondent had committed the infractions alleged in the complaint and recommended an indefinite suspension, to run consecutively to the indefinite suspension that respondent was currently serving. For the reasons that follow, we depart from the board's recommendation and order that respondent be permanently disbarred.

### Misconduct

**{¶ 4}** Beginning in August 2003, respondent entered into a conspiracy with Dr. Walter Broadnax and George Beatty to illegally obtain the prescription drugs Percodan, Percocet, and OxyContin by deception. Throughout this conspiracy, respondent was also acting as Dr. Broadnax's attorney, working for free in exchange for prescriptions.

**{¶ 5}** Later in the conspiracy, in November 2004, respondent orchestrated an elaborate scheme to bilk his client/coconspirator, Dr. Broadnax, out of $50,000. Respondent falsely advised the doctor that his phone had been tapped and that he was about to be indicted as the result of a criminal investigation by the Bureau of Workers' Compensation for irregular billing practices. Respondent told Dr. Broadnax that for $50,000, respondent could bribe state officials to make the investigation "go away." Respondent then promised Dr. Broadnax that he would provide him with the incriminating evidence, which the doctor could then destroy.

**{¶ 6}** All of these claims respondent made to his client, Dr. Broadnax, were false. Respondent admitted that he had made these false claims to frighten the doctor into giving him $50,000. After Dr. Broadnax was unable to come up with the $50,000, respondent and Beatty falsely advised him that they would "loan" him the $50,000 for the bribe that respondent would deliver to the state official. When Dr. Broadnax was later unable to repay the "loan," respondent used this indebtedness to pressure the doctor into writing illegal prescriptions without any further compensation from respondent.

**{¶ 7}** Between November 2004 and January 2007, Dr. Broadnax wrote approximately 700 to 800 prescriptions for respondent and Beatty. To avoid triggering an investigation by law enforcement, respondent went so far as to provide Dr. Broadnax with names of people for him to record as the recipients of the prescriptions. Some of the names used on the prescriptions were those of former or current clients, sometimes with their knowledge and/or assistance and sometimes without. Sometimes respondent would pay the party for whom the prescription was written to fill the prescription and return it to him. For example, respondent used two clients whom he had represented in multiple felony charges for drug trafficking and possession in this fraudulent scheme, further jeopardizing them. In addition, respondent used at least three employees from his law office to fill the prescriptions made out in their names and then provide the drugs to respondent. Respondent even obtained a prescription in the names of his daughter and a friend of his daughter.

**{¶ 8}** Sometimes respondent would pay Dr. Broadnax $100 per prescription. Other times, he provided free legal services for the drugs. Moreover, respondent also purchased prescription drugs and cocaine from his coconspirator, George Beatty, and others, including his wife's cousin. To cover

up his behavior, respondent lied to judges and other attorneys, telling them he had M.S. or Lou Gehrig's disease.

{¶ 9} In September 2008, respondent was indicted in federal court on conspiracy to obtain Schedule II controlled substances by deception in violation of Section 843(a)(3), Title 21, U.S.Code, between August 2003 and January 2007, a felony. A plea agreement was filed under which respondent pleaded guilty to conspiring with Dr. Broadnax, George Beatty, and others to unlawfully obtain possession of Schedule II controlled substances by deception. On April 14, 2009, respondent was sentenced to 24 months' incarceration, one year of supervised release, and 1,000 hours of community service.

{¶ 10} As a result of respondent's felony conviction, this court entered an interim suspension order in July 2009. *In re Lawson,* 122 Ohio St.3d 1485, 2009-Ohio-3752, 910 N.E.2d 1038.

**Violations**

{¶ 11} The panel found and the board agreed that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(3), prohibiting illegal conduct involving moral turpitude; 1-102(A)(4), prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation; 1-102(A)(5), prohibiting conduct that is prejudicial to the administration of justice; 1-102(A)(6), prohibiting conduct that adversely reflects on the lawyer's fitness to practice law; 5-101(A)(1), prohibiting a lawyer from accepting employment if the lawyer's professional judgment will be affected by the lawyer's financial and personal interests; 7-102(A)(7), prohibiting a lawyer from counseling a client in conduct that the lawyer knows to be illegal; and 7-102(A)(8), prohibiting a lawyer from knowingly engaging in illegal conduct.

**Aggravation and Mitigation**

{¶ 12} Pursuant to Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), the panel found the following aggravating factors: (1) prior disciplinary offense (BCGD Proc.Reg. 10(B)(1)(a)), (2) dishonest or selfish motive (BCGD Proc.Reg. 10(B)(1)(b)), (3) pattern of misconduct (BCGD Proc.Reg. 10(B)(1)(c)), and (4) multiple offenses (BCGD Proc.Reg. 10(B)(1)(d)).

{¶ 13} The panel further found the following factors in mitigation to be present: (1) full and free disclosure to the disciplinary authority or cooperative attitude toward the proceedings (BCGD Proc.Reg. 10(B)(2)(d)), (2) character and reputation (BCGD Proc.Reg. 10(B)(2)(e)), (3) imposition of other penalties or sanctions (BCGD Proc.Reg. 10(B)(2)(f)), (4) chemical dependency (BCGD Proc.Reg. 10(B)(2)(g)), and (5) other interim rehabilitation (BCGD Proc.Reg. 10(B)(2)(h)).

**Sanction**

{¶ 14} Relator recommended that respondent be disbarred from the practice of law. Respondent sought an indefinite suspension. The panel and board recommended that respondent be indefinitely suspended from the practice of law with specified conditions for reinstatement. They also recommended that the suspension run consecutively to the first indefinite suspension.

{¶ 15} Although respondent in his objections to the board's report argued that his current misconduct was part of his initial misconduct, and therefore this matter is res judicata, respondent's three-and-a-half-year conspiracy with Dr. Walter Broadnax and George Beatty to illegally obtain prescription drugs by deception, respondent's misconduct towards his client, Dr. Broadnax, and

respondent's felony conviction were not matters charged in the prior disciplinary complaint.

{¶ 16} In 2008, this court was aware of respondent's chemical dependency issues, but we were unaware of the conduct of which respondent was ultimately convicted. Respondent's prior disciplinary case was decided in July 2008. Respondent was not charged with criminal conduct until September 2008, several months later, and was not sentenced until April 2009. Thus, it was not possible for the board and this court to consider the issues surrounding respondent's felony conviction.

{¶ 17} In respondent's first disciplinary case, this court noted the "pervasive pattern of professional misconduct." Id., 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, ¶ 2. However, the majority emphasized the "compelling" evidence "showing how respondent's chemical dependence had contributed to cause his misconduct." Id., ¶ 68. At that time, the court noted the significant evidence of respondent's efforts to address his chemical dependence. Id., ¶ 68-71. The court agreed with the panel and board's conclusion that respondent had made a case for eventually practicing law again based on the evidence of his character, reputation, remorse, chemical dependence, and recovery efforts. Id., ¶ 74.

{¶ 18} At the time of the first case, Chief Justice Moyer issued a strong dissent in which he concluded that in view of the seriousness and frequency of the misconduct at issue, he would disbar the respondent. Id., ¶ 76 (Moyer, C.J., dissenting). The dissent acknowledged respondent's chemical dependency, but noted that respondent "ignored his clients' interests and stole their money. He used his client trust * * * account to avoid creditors and purchase drugs. He lied to the Disciplinary Counsel about his illegal use of drugs, as well as his use of settlement proceeds and a client trust [account] for personal uses. The great

weight of his misconduct cannot be lifted by the mitigating factors cited by the majority." Id., ¶ 80 (Moyer, C.J., dissenting).

{¶ 19} Because we conclude that respondent's pervasive scheme in which he scammed his own clients and exploited dozens of current and former clients, office staff, and his own daughter were not part of the facts this court passed judgment on in respondent's prior disciplinary case, we reject the sanction recommended by the board. We believe that an indefinite suspension would fall short of protecting the public, which this court has articulated is the primary goal of the attorney disciplinary system. *In re Disbarment of Lieberman* (1955), 163 Ohio St. 35, 41, 56 O.O. 23, 125 N.E.2d 328; *Warren Cty. Bar Assn. v. Marshall*, 121 Ohio St.3d 197, 2009-Ohio-501, 903 N.E.2d 280, ¶ 19.

{¶ 20} Chemical dependency and mental-health impairments present a significant problem for attorneys and the disciplinary system. But the harm respondent inflicted on his clients, his office staff, the profession, and the administration of justice through his elaborate and continuing pattern of misconduct outweighs the mitigation of his substance-abuse issues. Although respondent attempts to minimize his criminal acts and illegal conduct involving moral turpitude by arguing that he did not distribute medications to others, the cumulative nature of respondent's misconduct, beginning with his first disciplinary case involving multiple clients, and ending with his scheme to scam clients, staff, and the system, merits disbarment.

{¶ 21} This court has disbarred attorneys for similar or less egregious conduct than that demonstrated by respondent. For example, most recently in *Cincinnati Bar Assn. v. Farrell*, 129 Ohio St.3d 223, 2011-Ohio-2879, 951 N.E.2d 390, this court disbarred an attorney who had previously been suspended from the practice of law for two years, stayed on conditions, based on findings that he had fabricated documents, forged his wife's signature to a power of

attorney, lied to secure the notarization of the power of attorney, and then used the forged document to obtain credit. Id., ¶ 6-10, 23.

{¶ 22} In *Farrell*, this court concluded, as we do here, that the attorney displayed the same deceit as he had in his earlier disciplinary case. Id. at ¶ 33. Although we concluded that Farrell's depression appeared to be the result, rather than the cause, of his misconduct, while respondent's chemical dependence clearly was a contributing factor in his misconduct, the result should be the same. Both Farrell and respondent demonstrated a penchant for lying and deceit. Farrell engaged in a six-year pattern of pathological lying and deceptive conduct. Respondent engaged in a three-and-a-half-year pattern of similar pathological lying and deceit.

{¶ 23} In *Farrell*, we emphasized three cases that are equally relevant here:

{¶ 24} "We have permanently disbarred attorneys who have demonstrated a proclivity for lying and deceit. In *Cincinnati Bar Assn. v. Deaton*, 102 Ohio St.3d 19, 2004-Ohio-1587, 806 N.E.2d 503, ¶ 3-22, an attorney had repeatedly lied and deceived his clients and his firm to cover up his neglect of client matters. Observing that the attorney had deliberately concealed his neglect to protect his personal interests, and adopting a master commissioner's finding that the attorney was predisposed to dishonesty and was lacking in integrity, we concluded that an indefinite suspension was too lenient. Id. at ¶ 27, 30. Therefore, we permanently disbarred the attorney. Id. at ¶ 32.

{¶ 25} "Similarly, in *Disciplinary Counsel v. Manogg* (1996), 74 Ohio St.3d 213, 214-216, 658 N.E.2d 257, we permanently disbarred an attorney who had been convicted on two felony counts of using false Social Security numbers, had created several aliases, and had made up fake property deeds and appraisals to obtain fraudulent mortgage loans. In doing so, we stated that we were 'most

troubled * * * by respondent's propensity to scheme and deceive without any moral appreciation for the lies he tells or the fraud he perpetrates.' Id. at 217. And in *Trumbull Cty. Bar Assn. v. Kafantaris*, 121 Ohio St.3d 387, 2009-Ohio-1389, 904 N.E.2d 875, ¶ 6-7, 15, we found that permanent disbarment was the only appropriate sanction for an attorney who, among other things, submitted an affidavit to this court falsely stating that he had complied with the terms of a previous suspension order. Likewise, we agree that respondent's pattern of lying and deceit strongly suggests that he lacks the ability to conform his behavior to the ethical standards incumbent upon attorneys in this state." *Farrell*, 129 Ohio St.3d 223, 2011-Ohio-2879, 951 N.E.2d 390, ¶ 34-35.

{¶ 26} Other examples of disbarment that are relevant to this case include *Disciplinary Counsel v. Longo* (2002), 94 Ohio St.3d 219, 761 N.E.2d 1042, where this court disbarred the respondent after he pleaded guilty to misprision of a felony. Longo was found to have violated three Disciplinary Rules: DR 1-102(A)(3) (illegal conduct involving moral turpitude), 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1-102(A)(6) (conduct adversely reflecting on the lawyer's fitness to practice law). Here, respondent has been held responsible for violating those three Disciplinary Rules, as well as four others, including those prohibiting conduct prejudicial to the administration of justice and knowingly engaging in illegal conduct.

{¶ 27} Further, in *Disciplinary Counsel v. Bein,* 105 Ohio St.3d 62, 2004-Ohio-7012, 822 N.E.2d 358, this court disbarred an attorney following felony convictions for conspiring to engage in the interstate transportation of stolen property and conspiring to engage in money laundering. We noted that "[a] lawyer who engages in the kind of criminal conduct committed by respondent violates the duty to maintain personal honesty and integrity, which is one of the most basic professional obligations owed by lawyers to the public. Respondent's

misconduct was harmful not only to the businesses affected but also to the legal profession, which is and ought to be a high calling dedicated to the service of clients and the public good." Id. at ¶ 13. This principle is equally applicable in this case. Respondent's elaborate scheme was harmful not only to his clients, staff, and family, but to the legal profession and the administration of justice.

{¶ 28} In *Cleveland Bar Assn. v. Fatica* (1971), 28 Ohio St.2d 40, 57 O.O.2d 158, 274 N.E.2d 763, the respondent, an attorney and member of city council, was charged with soliciting and accepting money to influence his vote on an application for transfer of a state liquor permit. This court noted that "[a] civilized society cannot long remain without implicit confidence in those who occupy responsible positions of public trust, including both public officials, and members of the bar who are 'officers of the court.' The solicitation and acceptance of a bribe by such a person is, by its very nature, so serious as to warrant, if not to compel, permanent removal from such a position of trust." Id. at 43. In the case at bar, respondent offered to bribe a public official during his scheme to defraud his own client.

{¶ 29} In *Toledo Bar Assn. v. Neller*, 98 Ohio St.3d 314, 2003-Ohio-774, 784 N.E.2d 689, this court disbarred an attorney who was convicted of five felony counts: one count of conspiracy to distribute cocaine, marijuana, and heroin and four counts of unlawful use of a communication facility, all in violation of federal law. Moreover, Neller furthered and promoted the conspiracy by advising his client on ways to avoid detection of illegal activities. In spite of similarly glowing testimonials by the legal community regarding Neller's significant contributions as an outspoken advocate for minorities, this court held that "no mitigating circumstances can undo the harm of respondent's integral role in this drug ring." Respondent, too, engaged in a drug ring of his own creation, which included scamming his own clients and using and abusing other current and

former clients, office staff, and his own family. He enlisted these parties and in some cases made them accomplices to his criminal enterprise. He put them all at risk for criminal charges of their own.

**{¶ 30}** Moreover, this court has permanently disbarred attorneys in the past for less pervasive misconduct in their *first* disciplinary case. For example, in *Disciplinary Counsel v. Phillips*, 108 Ohio St.3d 331, 2006-Ohio-1064, 843 N.E.2d 775, this court disbarred an assistant prosecuting attorney with no prior disciplinary violations when he accepted bribes to fix criminal cases. Id., ¶ 4-6. Although the assistant prosecutor violated the law while he served in a position of public trust, the court also considered his strong evidence of mitigation regarding his chemical dependency. Id., ¶ 13. However, we noted that "any mitigating factor in a disciplinary case like this must be weighed against the seriousness of the rule violations that the lawyer has committed." Id. Although it can be argued that respondent was not in a position of public trust like the assistant prosecutor, that fact is offset by respondent's prior disciplinary action and commission of a felony. Respondent violated ethical prohibitions against illegal conduct and advising clients to engage in illegal acts. He also solicited a client to participate in a phony scheme to bribe a state official. Moreover, respondent was aware of this deception during the 2008 disciplinary proceeding and failed to disclose it, which conflicts with his protestations of remorse.

*Client Security Fund and Money Owed*

**{¶ 31}** Respondent's misconduct affected numerous clients beyond the 15 in his prior disciplinary case and those in his current disciplinary case. The Client Security Fund ("CSF") has made awards to over 30 of respondent's former clients, totaling over $300,000. Over 20 of those clients were in addition to those identified in respondent's current and prior disciplinary cases. All of these clients received CSF awards due to respondent's dishonest conduct. Despite the fact that

at the time of the hearing, respondent held a job earning around $40,000 per year, respondent admitted that he had made no effort to begin to reimburse the CSF or this court for the costs associated with his prior disciplinary case, despite this court's order to do so.

*OLAP Contract Requirements*

**{¶ 32}** In addition to owing thousands of dollars to former clients and in court costs, respondent has failed to comply with his Ohio Lawyers Assistance Program ("OLAP") contract as this court previously ordered. Respondent entered into a five-year OLAP contract in April 2007. This contract required that respondent contact his OLAP monitor at least weekly and submit monthly logs of his attendance at Alcoholics Anonymous meetings. In this court's prior indefinite-suspension order, respondent was ordered to comply with his OLAP contract. Despite these requirements, respondent has failed to have weekly contact with his OLAP monitor and has failed to submit any AA meeting logs to OLAP.

**{¶ 33}** At his hearing, respondent attempted to suggest that his volunteer activities with the Hawaii lawyers' assistance program were somehow equivalent to compliance with his OLAP contract. However, the evidence established that respondent's AA sponsor lives in Ohio and has only limited telephone and e-mail contact with respondent in Hawaii. Further, respondent has not entered into a formal, written monitoring contract with the Hawaii lawyers' assistance program. Respondent was ordered to comply with his OLAP contract, and he admitted that he has not done so. This failure to comply with an order from this court further erodes our confidence in respondent's ability to practice law in accordance with the high standards required of all attorneys.

**Conclusion**

**{¶ 34}** "The purpose of disbarment is not to punish the individual. It is intended to protect the public, the courts and the legal profession. Thus the moral

character of an attorney is at all times to be scrutinized for the purpose of insuring that protection. And such moral character is necessarily at issue in a disbarment proceeding. If a prior attempt at discipline has been ineffective to provide the protection intended for the public, then such further safeguards should be imposed as will either tend to effect the reformation of the offender or remove him entirely from the practice. The discipline for a repeated offense may be much greater than would have been imposed were it a first offense, yet such greater discipline is not a meting out of further punishment for prior acts but is a determination of the attorney's fitness to practice." *Lieberman,* 163 Ohio St. at 41, 56 O.O. 23,125 N.E.2d 328.

{¶ 35} Respondent could have been found unfit to continue to practice law in 2008. Had this court known of the full extent of respondent's abuse of the legal system, of his deception, and of his criminal enterprise in 2008, the court likely would have disbarred him at that time. While we are sensitive to the respondent's struggles with chemical dependency, this elaborate and felonious conspiracy to obtain prescription narcotics by exploiting current and former clients, staff, and family goes far beyond simple drug addiction. Respondent intentionally deceived clients, family, office staff, fellow attorneys, and judges alike.

{¶ 36} Having weighed the aggravating and mitigating factors in this case and having considered the sanctions previously imposed for comparable conduct, we reject the board's recommendation. Accordingly, we permanently disbar Kenneth L. Lawson from the practice of law in Ohio. Costs are taxed to the respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., concur in judgment only.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Senior Assistant Disciplinary Counsel, for relator.

Bieser, Greer & Landis, L.L.P., and David C. Greer, for respondent.

_____