**TOLEDO BAR ASSOCIATION *v.* ABOOD.**

[Cite as *Toledo Bar Assn. v. Abood*, **104 Ohio St.3d 655, 2004-Ohio-7015.**]

*Attorneys at law – Misconduct – One-year suspension with six months stayed on conditions — Attorney's failure to pay federal income tax for several years adversely reflects on his fitness to practice law – Failure to keep client funds separate from attorney's funds.*

(No. 2004-1066 – Submitted October 26, 2004 – Decided December 29, 2004.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 03-031.

——————————————

**Per Curiam.**

{¶ 1} On April 14, 2003, relator, Toledo Bar Association, filed a complaint charging respondent, Norman Abood, of Oregon, Ohio, Attorney Registration No. 0029004, in three counts with violations of the Code of Professional Responsibility. Respondent answered, admitting some facts and disputing others. On January 27, 2004, a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing. Before the hearing, the parties submitted an agreed stipulation of facts. The parties also stipulated that respondent had violated DR 1-102(A)(6) (prohibiting conduct that adversely reflects on an attorney's fitness to practice law) and 9-102(A) (requiring an attorney to keep client funds separate from attorney funds and to deposit only client funds in an attorney's trust account). Additionally, respondent testified and submitted exhibits at the hearing and submitted numerous character-reference letters written in his behalf.

{¶ 2} The stipulations and evidence before the panel established that respondent was born in June 1953 and was admitted to the practice of law in Ohio

in May 1979. By the late 1980s, respondent had developed a successful practice in business-contract negotiations and litigation. During the same period, however, respondent also suffered various financial problems, some resulting from the failure of two principal clients to pay over $220,000 in legal bills.

{¶ 3} With respect to Count One, the evidence established that as a result of financial difficulties, respondent failed to pay his federal income taxes as the taxes became due on April 15 each year for the years 1987, 1988, 1990, 1991, 1993, 1996, 1997, and 1999. But in October 1994, respondent did pay over $118,000 in taxes, including penalties and interest for tax years 1987 through 1992. Respondent filed his federal income-tax returns for 1993 and 1994 in August 2002.

{¶ 4} At some point, the Internal Revenue Service ("IRS") commenced a criminal investigation into respondent's federal-tax situation. According to respondent, he asked the IRS for a payment plan to satisfy his obligations, but the IRS indicated that it would not work out a payment plan with him until he had liquidated all his assets, including his home, borrowed the maximum on his credit cards, and exhausted all of his resources. Respondent declined to comply and tried to satisfy his obligations without a payment plan with the IRS. The IRS responded with intense collection procedures. In May 1993, respondent believed that the IRS had agreed to a payment plan that required respondent to make a down payment of $10,000 and monthly installments of $2,500. In July 1993, however, the IRS seized respondent's home and sold it at auction.

{¶ 5} On May 16, 2002, respondent pleaded guilty in the United States District Court for the Northern District of Ohio, Western Division, to two misdemeanor counts of failure to pay income taxes for 1994 and 1995. On September 3, 2002, the federal district judge sentenced respondent to consecutive terms of eight months for each offense. Respondent was incarcerated from

October 28, 2002, until his release, on November 12, 2003, to a halfway house. His term of imprisonment ended on December 22, 2003.

{¶ 6} As to Count Three, the evidence established that respondent received $63,657 in April 1994, after a residential real-estate closing. The home in question was the one that respondent and his wife had owned until the IRS seizure. His mother had purchased it at the IRS auction, and respondent and his wife bought it back. After the sale, respondent deposited the net sale proceeds in his IOLTA account because he feared that the IRS would seize the funds if they were placed in his personal account.

{¶ 7} Based on the evidence and the stipulated violations, the panel found that respondent's conduct as to Count One violated DR 1-102(A)(6) and as to Count Three violated DR 9-102(A). On relator's motion, the panel dismissed other allegations of disciplinary violations contained in Counts One and Three. The panel also dismissed a second count as unproven.

{¶ 8} At the hearing, relator urged that respondent's license to practice law in Ohio be suspended for two years with one year stayed. In contrast, respondent requested a public reprimand as the sanction.

{¶ 9} In recommending a sanction for this misconduct, the panel found no aggravating circumstances. See Section 10 (Guidelines for Imposing Lawyer Sanctions) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD.Proc.Reg."). As to mitigating features, the panel noted that respondent had no prior disciplinary record and had "fully cooperated with the Internal Revenue Service during [its] entire investigation of him." Moreover, the panel found that respondent had fully cooperated with relator's investigation and had informed relator immediately when he realized that he was under investigation and was going to be charged by the IRS.

**{¶ 10}** The panel also considered in mitigation 16 character-reference letters from respondent's clients and fellow lawyers "praising [respondent's] legal abilities, his integrity, his honesty, [and] his work ethic." The panel additionally noted that respondent had no problems with his clients, lawyers, or judges and that his problems were "of a financial nature, and deal exclusively with the IRS, not with his practice, or his capacity as an attorney."

**{¶ 11}** Further, the panel noted that respondent had "presented himself in exemplary fashion" and "was incredibly remorseful." The panel was also convinced that his misconduct would never be repeated. Finally, the panel noted that respondent had already been punished, "having served fourteen (14) months of incarceration for his late payment of income tax."

**{¶ 12}** The panel recommended that respondent receive a public reprimand. The board adopted the findings and conclusions of the panel; however, because of respondent's "continuing difficulties with tax matters," the board recommended that he be suspended from the practice of law for one year with six months of that suspension stayed on conditions. The board further recommended that the costs of the proceeding be taxed to respondent.

**{¶ 13}** Respondent objects to the board's recommendation. He argues that a public reprimand is the appropriate sanction given the lack of aggravating factors, his jail sentence, and his deep remorse. Relator responds that an actual suspension of respondent's license to practice law is warranted in view of respondent's criminal convictions for failure to pay his personal-income taxes.

**{¶ 14}** Upon review, we agree that respondent violated DR 1-102(A)(6) and 9-102(A), as found by the board. We also agree that an actual suspension is appropriate for respondent's long history of default on his income-tax obligations. We therefore adopt the board's recommendation and order a one-year suspension, staying only the last six months of that suspension on conditions.

**{¶ 15}** "Each disciplinary case involves unique facts and circumstances." BCGD Proc.Reg. 10(A). But as relator argues, we generally impose a one-year suspension for a lawyer's failure to comply with income-tax laws. See, e.g., *Disciplinary Counsel v. Baker* (1992), 65 Ohio St.3d 302, 603 N.E.2d 990; and *Disciplinary Counsel v. Bowen* (1988), 38 Ohio St.3d 323, 528 N.E.2d 172 (attorney's convictions for failing to file federal income-tax returns warranted a one-year actual suspension). We have long warned practitioners of the seriousness of this type of misconduct:

**{¶ 16}** "One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession — because obedience to the law exemplifies respect for the law." *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670.

**{¶ 17}** Respondent, however, points to cases in which we have deviated from the standard of imposing a one-year suspension for failure to comply with tax laws. In *Dayton Bar Assn. v. Millonig* (1999), 84 Ohio St.3d 403, 704 N.E.2d 568, for example, an attorney who pleaded guilty to failing to file tax returns for three years received a public reprimand. In *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, we conditionally stayed a six-month suspension from practice for an attorney who misrepresented his contributions to his law firm's retirement plan for four years, including filing false state and federal income-tax returns. Most recently, in *Lake Cty. Bar Assn. v. Ezzone*, 102 Ohio St.3d 79, 2004-Ohio-1774, 806 N.E.2d 991, we conditionally stayed a one-year suspension from practice for an attorney who was convicted of one misdemeanor count of failing to file his tax return.

**{¶ 18}** The less severe sanctions in *Millonig*, *Markijohn*, and *Ezzone* were justified on many of the same mitigating factors that respondent has presented here, and in each, we noted that the attorney's misconduct did not involve lying to a court or client. We therefore rely on this authority for imposing a less severe sanction than a one-year suspension of respondent's license to practice with no portion of the suspension stayed.

**{¶ 19}** However, we also find that respondent's misconduct warrants a sanction more onerous than the public reprimand in *Millonig* or the stayed suspensions in *Markijohn* and *Ezzone*. In none of those cases did the attorney fail to pay as much of his tax liability for as long as respondent did. The sheer breadth of respondent's default must be seen as an aggravating circumstance. Accord *Geauga Cty. Bar Assn. v. Bruner*, 98 Ohio St.3d 312, 2003-Ohio-736, 784 N.E.2d 687 (attorney indefinitely suspended for failing to report and remit federal payroll withholding taxes for over ten years). In addition, we did not find in any of those three cases anything like the investigation and enforcement measures that federal tax authorities had to undertake to collect the tax deficit that respondent had amassed.

**{¶ 20}** Although we accept as mitigating the factors enumerated in the panel and board reports, we also take into account the aggravating circumstances not found by the panel or board. Respondent is therefore suspended from the practice of law in Ohio for one year; however, the last six months of this suspension are stayed on the conditions that respondent refrain from any violations of the Code of Professional Responsibility and that respondent pay the costs of these disciplinary proceedings. If respondent violates either condition, the stay will be lifted, and respondent will serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., F.E. SWEENEY, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

LUNDBERG STRATTON, J., dissenting.

{¶ 21} I would suspend respondent from the practice of law for one year with the entire suspension stayed.  Therefore, I respectfully dissent.

RESNICK and PFEIFER, JJ., concur in the foregoing dissenting opinion.

_____

McKenny, Ernsberger & Grude, L.L.C., David G. Grude, M. Susan Swanson, and Jonathan B. Cherry, for relator.

James D. Caruso, for respondent.

_____