TOLEDO BAR ASSOCIATION *v.* LOWDEN.

[Cite as *Toledo Bar Assn. v. Lowden,* 105
Ohio St.3d 377, 2005-Ohio-2162.]

(No. 2004–1799—Submitted January 12, 2005—Decided May 18, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Jeffrey T. Lowden, of Sylvania, Ohio, Attorney Registration No. 0071548, was admitted to the practice of law in Ohio in 1999. On June 9, 2003, relator, Toledo Bar Association, charged respondent with having violated the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations and respondent's testimony. The panel made findings of misconduct, which the board adopted, and a recommendation, which the board modified.

Misconduct

*The Harp Case*

{¶ 2} In April 2002, Diann Harp hired respondent to represent her in a divorce case. Harp paid respondent a $500 retainer and $100 for the cost of filing a counterclaim. On May 15, 2002, respondent filed divorce papers on Harp's behalf and a counterclaim with four support schedules in the Wood County Court of Common Pleas, Domestic Relations Division. Before filing the support schedules, however, respondent signed Harp's name without her permission on the schedules and then notarized the signatures as genuine. Thereafter, respondent did not return Harp's telephone calls, properly prepare her case, or appear at trial.

{¶ 3} Respondent conceded that he did not account for his conduct during relator's investigation of Harp's grievance. After relator filed a formal complaint and he retained counsel, however, respondent and his counsel responded professionally to the proceedings. After the complaint was filed, respondent also refunded $400 of Harp's money.

{¶ 4} The panel found that respondent's conduct in the Harp case violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice), 6–101(A)(3) (prohibiting neglect of a legal matter), 7–101(A)(2) (requiring a lawyer to carry out a contract of professional employment), and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation).

*The Miller Case*

{¶ 5} In May 2002, Timothy Miller retained respondent to represent him in a criminal case. To pay for his legal services, Miller transferred title to a 1993 Ford, arguably worth about $2,000, to respondent. Respondent consulted with his client, appeared on his behalf, and did some other work, but ultimately failed to complete the client's representation. Other counsel had to be appointed to take over Miller's defense.

{¶ 6} Respondent conceded that he also failed to account for his conduct during relator's investigation of Miller's grievance. About two months before the complaint was filed, however, respondent attempted, with his counsel's and relator's assistance, to repay any money he owed to Miller. As of the hearing date, the refund arrangements had not been completed.

{¶ 7} The panel found in the Miller case that respondent had committed additional violations of DR 6–101(A)(3) and 7–101(A)(2) and Gov.Bar R. V(4)(G).

Sanction

{¶ 8} In recommending a sanction for this misconduct, the panel considered the aggravating and mitigating factors of respondent's case, including his background. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). After high school, respondent served in the United States Navy, and he is a veteran of the Gulf War, having served on the USS Inchon. He was honorably discharged in 1992 and afterward earned a bachelor of arts degree from the University of Toledo. Respondent then attended Oklahoma City University School of Law, earning his law degree in 1998. After residing for a short time in New York City, he returned to Toledo and practiced first in the Public Defender's Office and then with two different attorneys until 2002. Respondent is currently employed with the Ohio Civil Rights Commission as an investigator of discrimination charges, a job that does not require him to practice law.

{¶ 9} Of particular significance to the board was that respondent had suffered from mental illness that contributed to his misconduct. On February 6, 18, and 24, 2004, at relator's request, respondent submitted to a psychiatric examination that confirmed his bipolar disorder, the symptoms of which respondent had begun

to experience sometime before the spring of 2002 and for which he had previously sought treatment. The examining psychiatrist concluded that respondent's disorder had significantly compromised his ability to competently and professionally engage in the practice of law. The psychiatrist concluded that by their February 24 appointment, respondent's condition was stable and was being adequately managed.

{¶ 10} Respondent explained that he had developed mental illness sometime before 2002, but that that year it seemed to manifest itself more severely. Respondent stated that at the urging of friends, family, and colleagues, who were not convinced that he was able to effectively represent clients, he had closed his law practice and sought psychiatric help from Veterans Administration clinics. Respondent testified that he was ultimately diagnosed with bipolar disorder of the manic type, for which he takes prescribed medication daily, sees a psychologist weekly, and consults a psychiatrist regularly.

{¶ 11} Respondent also explained that he had experienced paranoid delusions as part of his mental illness and that these had made it difficult for him to leave his house or accomplish even the simplest tasks. When asked to describe the period of time when he signed the Harp documents, respondent testified:

{¶ 12} "I was having paranoid delusions at the time. Extremely, extremely paranoid. There was a period where I was going through manic highs and manic lows. Besides the time frame just blending together, the days, the months, the weeks, the months all blending into one, no, I can't tell you why I did it. Perhaps I panicked that the documents weren't signed and they were due. That's just a guess."

{¶ 13} As for why he did not cooperate with the disciplinary investigation, respondent remembered:

{¶ 14} "That was when I was in the middle of the worse [sic] of my illness, and I do recall contacting the investigating attorney and telling him that I would like to cooperate as fully as I could. I just felt I was unable to cooperate to the extent I would normally or would right now. My mental illness prevented me from cooperating as fully as I should have."

{¶ 15} Except for a few traffic cases, respondent is not currently practicing law. He said that he currently does not trust himself to perform on a professional level and does not want to practice law at all until he has had several years of medication "under [his] belt." Respondent further expressed his sincere remorse for his misconduct.

{¶ 16} The panel found only one aggravating feature—that respondent had been professionally disciplined before. On April 24, 2003, respondent was suspended from the practice of law for an interim period pursuant to Gov.Bar R.

V(5)(A)(4) for failure to pay child support. See *In re Lowden,* 98 Ohio St.3d 1547, 2003-Ohio-2032, 787 N.E.2d 9. He was reinstated on June 6, 2003. See *In re Lowden,* 99 Ohio St.3d 1429, 2003-Ohio-2891, 789 N.E.2d 630.

{¶ 17} The panel recommended the sanction jointly suggested by the parties— that respondent be suspended from the practice of law for six months and be ordered to participate in the Ohio Lawyers Assistance Program. The panel also added the condition that respondent make restitution to Miller before filing any application for reinstatement. The board adopted the findings of fact and conclusions of law of the panel, but modified the sanction. "[B]ased on the misconduct in the record" and respondent's documented mental-health condition, the board recommended that respondent's license to practice law be suspended for two years with the entire suspension stayed on the condition that he continue his mental-health treatment and make quarterly reports to relator about his progress.

{¶ 18} Upon review, we agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 6–101(A)(3), and 7–101(A)(2), and Gov.Bar R. V(4)(G), as found by the panel and the board. We also agree that a two-year suspension, all stayed on the recommended conditions, is appropriate.

{¶ 19} Although a violation of DR 1–102(A)(4) for falsifying court documents ordinarily requires that a lawyer receive a term of actual suspension for the public's protection, see, e.g., *Disciplinary Counsel v. Insley,* 104 Ohio St.3d 424, 2004-Ohio-6564, 819 N.E.2d 1109 (indefinite suspension), each case of professional misconduct must be decided on the unique facts and circumstances presented. *Toledo Bar Assn. v. Abood,* 104 Ohio St.3d 655, 2004-Ohio-7015, 821 N.E.2d 560, ¶ 15. BCGD Proc.Reg. 10(B)(2)(g) permits us to temper the sanction we impose for a lawyer's dishonesty to a client and court upon proof that mental disability caused the misconduct, under some circumstances.

{¶ 20} Here, respondent was afflicted with a mental disorder whose symptoms were far more debilitating than we typically see when a lawyer invokes BCGD Proc.Reg. 10(B)(2)(g) in mitigation. As respondent testified to the panel, his disability did not merely impede his performance on his clients' behalf, it effectively prevented him from functioning at all in accordance with his professional oath. Because of this and respondent's willingness to commit to treatment, we exercise lenience and tailor our sanction to help manage the disability while at the same time preserving the public's trust in the legal profession.

{¶ 21} Thus, we adopt the sanction recommended by the board. Respondent is hereby suspended from the practice of law for two years; however, the entire suspension is stayed on the condition that he continue his mental-health treatment. To ensure that respondent successfully manages his condition, respondent is also ordered to provide quarterly reports to relator about his progress

throughout the stayed suspension period. Respondent is further ordered to make restitution in the Miller matter within 90 days of this order. If respondent fails to comply with any of these conditions, the stay shall be lifted and respondent shall serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

_____

Jonathan B. Cherry, Bar Counsel, Michael E. Hyrne, and John A. Borell, for relator.

Arnold & Caruso and James D. Caruso, for respondent.