Per Curiam.
{¶ 1} Respondent, William Eric Minamyer of Loveland, Ohio, Attorney Registration No. 0015677, was admitted to the practice of law in Ohio in 1979.[1] In June 2009, relator, Butler County Bar Association, filed a four-count complaint charging respondent with multiple violations of the Code of Professional Responsibility and the Rules of Professional Conduct.[2]
{¶ 2} Respondent initially cooperated in relator’s investigation. Although he was served with the complaint, he did not file an answer or otherwise respond to it. A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted relator’s motion for default, making findings of fact and misconduct and recommending that respondent be suspended from the practice of law for one year with one year of probation following reinstatement, including the appointment of a monitor in accordance with Gov.Bar R. V(9)(B). The board adopted the master commissioner’s findings of fact and conclusions of law but recommended a two-year suspension with the second year stayed for monitored probation. This court issued an order to show cause why the recommendation of the board should not be accepted by the court.
*434 {¶ 3} Respondent responded to the show-cause order, seeking leave to introduce mitigating evidence that he sustained a traumatic brain injury while serving in the Navy Reserve Judge Advocate General’s Corps and that he suffered from posttraumatic-stress disorder (“PTSD”) as a result of his active military service. He also objected to the board’s findings of fact.
{¶ 4} After oral argument, we remanded the matter to the board to receive and consider evidence regarding respondent’s health conditions, and the board appointed a panel to comply with our order. As a result of those proceedings, the board issued a revised recommendation that respondent be suspended for two years with 18 months stayed on conditions, and respondent has once again filed objections.
{¶ 5} We adopt the board’s findings of fact and misconduct because the record clearly and convincingly demonstrates that respondent (1) failed to notify his client that he did not carry malpractice insurance, (2) neglected that client’s legal matter, (3) failed to communicate with the client regarding the status of her case, and (4) led the client to believe that her case was still pending after it had been dismissed for failure to prosecute. Because we accord greater weight to respondent’s mitigating mental-health issues, however, we suspend respondent from the practice of law for one year but stay the entire suspension on conditions.
Misconduct
{¶ 6} During its investigation, relator deposed respondent and the grievant. The deposition testimony demonstrates that in April 2006, respondent filed a complaint on the grievant’s behalf in the Butler County Court of Common Pleas. Although respondent received notice of and participated in a mediation session and unsuccessfully opposed defendant’s counsel’s motion for leave to withdraw as counsel, he failed to submit a pretrial statement or appear at the scheduled pretrial on August 30, 2007. And in September 2007, the trial court granted the defendant’s unopposed motion to dismiss the complaint.
{¶ 7} When respondent learned of the dismissal, he advised the grievant that she did not need to appear for trial, without explaining that her case had been dismissed. From September to December 2007, when-the grievant called respondent to discuss her case, he told her that he would send her something in the mail, but he never did. In December 2007, the grievant received a statement of court costs due and learned for the first time that her complaint had been dismissed.
{¶ 8} Respondent admitted that he had failed to advise the grievant that he did not carry malpractice insurance but advanced various excuses for his neglect, including the misdirection of his mail by the court, an office move, and an illness. He offered no documentary evidence to corroborate his testimony.
*435 {¶ 9} In its December 18, 2009 report granting relator’s motion for default and in its December 9, 2010 report on remand, the board found that respondent had violated DR 1-104 and Prof.Cond.R. 1.4(c) (both requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance), DR 6-101(A)(3) and Prof.Cond.R. 1.3 (both requiring a lawyer to act with reasonable diligence in representing a client), Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of fact and misconduct.
Sanction
{¶ 10} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. Stark Cty. Bar Assn. v. Buttacavoli, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline (“BCGD Proc.Reg.”). Disciplinary Counsel v. Broeren, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.
{¶ 11} As aggravating factors, the board found that respondent had committed multiple ethical violations, had harmed his client, and had failed to cooperate in the disciplinary proceedings and that his failure to notify his client that her case had been dismissed was deceitful. See BCGD Proc.Reg. 10(B)(1)(d), (e), and (h). Although respondent testified that he suffered from depression, he did not substantiate his testimony with any medical records or testimony from his treating professionals.
{¶ 12} On remand, the panel appointed to receive and consider evidence regarding respondent’s health conditions conducted a hearing, at which it heard respondent’s testimony regarding his traumatic brain injury and PTSD, but neither party introduced any medical evidence regarding those conditions. Consequently, the board ordered respondent to submit to an independent psychiatric examination to determine if he suffered from mental illness.
{¶ 13} Citing the report of the independent psychiatric evaluator, Douglas Beech, M.D., the panel reluctantly found that respondent’s diagnosed mental-health condition qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g), observing that “his attitude seemed to be ‘to deny all wrongdoing, but if you don’t believe me, then I suffer from a mental disability that accounts for *436 my actions.’ ” While the board again recommended a two-year suspension from the practice of law, it concluded that 18 months of that suspension (rather than the 12 months it had previously recommended) be stayed on conditions.
{¶ 14} Respondent objects to the board’s report and, citing Dr. Beech’s conclusion that he did not timely defend himself due to his mental-health conditions, seeks an opportunity to address the merits of the underlying grievance. Specifically, respondent argues that his client’s case was reinstated by the trial court based upon certain falsehoods committed by the defendant to the action and that his client later obtained a default judgment in her favor.
{¶ 15} We have stated that we grant remands to supplement the record “only under the most exceptional circumstances.” See Dayton Bar Assn. v. Stephan, 108 Ohio St.3d 327, 2006-Ohio-1063, 843 N.E.2d 771, ¶5. We have already remanded this matter once to permit respondent to submit mitigating evidence of his mental disability. As a result of that remand, the record now contains evidence that his mental-health conditions played a significant role in his failure to timely respond to relator’s complaint. The alleged misdeeds of the defendant in the underlying civil case cannot excuse respondent’s deceit, failure to keep his client informed about the status of her case, failure to respond to her reasonable requests for information, and failure to timely seek relief from the judgment dismissing her case, all of which have been proven by clear and convincing evidence. Nor can they excuse his admitted failure to inform the client that he did not carry malpractice insurance. Because respondent has not demonstrated any exceptional circumstances warranting a second remand, we overrule this objection and adopt the board’s findings of fact and misconduct.
{¶ 16} In the alternative, respondent seeks a fully stayed suspension based upon the successful and ongoing treatment of his PTSD, depression, and traumatic brain injury, combined with the measures he has taken to safeguard his practice and the appointment of a practice monitor.
{¶ 17} After reading the record in this case, reviewing respondent’s medical records, and interviewing and examining respondent, Dr. Beech submitted a report to the panel. In that report, he found:
{¶ 18} “[Respondent] began receiving treatment in 2002 following an incident of trauma while working overseas in the Navy reserves. The helicopter he was a passenger in made a crash landing on a naval vessel and he suffered a head injury and loss of consciousness as a result. Preceding the crash was a period of intense anxiety as a realistic threat of death existed as a result of the tenuous circumstances. He subsequently experienced a depressive episode and substantial anxiety. Over ensuing months he developed classic symptoms of post traumatic stress disorder (PTSD) (traumatic re-experiencing [‘flashbacks’], phobic avoidance, night terrors, insomnia, and generalized anxiety). He was initially *437 prescribed the antidepressant Celexa which was helpful for depressive symptoms and anxiety. He subsequently underwent individual psychotherapy for PTSD symptoms which was very helpful to him as well. Though the symptoms of depression and PTSD have fluctuated and still persist, his symptoms have been generally well-managed, exacerbated in times of increased external stress. His depression has been moderately worse in the past year, as the recent revelations about additional injuries and impairments have led him to feel more depressed.
{¶ 19} “Additionally [respondent] was evaluated last year at the [Veterans Health Administration] medical center and diagnosed as having residual cognitive deficits attributable to a traumatic brain injury. He has been engaged in treatment and rehabilitation there to better define his cognitive deficits and maximize his strengths.”
{¶ 20} Dr. Beech found that respondent’s PTSD and depression played a significant role in his failure to timely respond to relator’s complaint and, to a lesser extent, contributed to his underlying misconduct. He concluded that by combining outpatient treatment and pharmacological management with a reduced caseload and the appointment of a practice monitor, respondent could continue to practice law in a safe and responsible manner.
{¶ 21} We are ever mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. Disciplinary Counsel v. Agopian, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368.
{¶ 22} Since respondent was first diagnosed with depression, PTSD, and traumatic brain injury, he has received substantial treatment. He has taken a prescribed antidepressant, participated in individual psychotherapy, and participated in various forms of rehabilitation, including speech therapy and mental exercises to improve his memory. Recognizing the seriousness of his conditions, respondent has also taken significant measures to ensure that his cognitive deficits will not have any negative effect on his clients. He has reduced the number of clients that he represents, uses a recorder, takes notes, and communicates with his clients by e-mail as much as possible. He has also limited the scope of his practice to domestic relations, general litigation, and labor law.
{¶ 23} This is the first disciplinary action that respondent has faced in his more than 30 years of practice, and it involves respondent’s conduct with respect to a single client matter. See BCGD Proc.Reg. 10(B)(2)(a) (providing that absence of a prior disciplinary record is a factor that may be considered in favor of a lesser sanction). And having observed respondent’s reasoned and articulate presentation at oral argument, we find his expressions of remorse and contrition to be genuine.
*438 {¶ 24} Taking into account respondent’s diagnoses, his treatment, and his remedial actions, we do not believe that an actual suspension is necessary to protect the public from future harm. Moreover, at oral argument, both of the parties agreed that a two-year suspension, all stayed on conditions, would adequately protect the public.
{¶ 25} In Toledo Bar Assn. v. Lowden, 105 Ohio St.3d 377, 2005-Ohio-2162, 826 N.E.2d 836, ¶ 4, 7, we disciplined an attorney who had neglected two separate client matters, failed to carry out his contract of professional employment in those matters, and failed to cooperate in the resulting disciplinary investigations. He had also falsely signed a client’s name on four support schedules, notarized them as genuine, and filed them with the domestic relations court. Id. at ¶ 2. Although we recognized that a violation of DR 1-102(A)(4) generally requires an actual suspension from the practice of law for the public’s protection, we observed that “BCGD Proe.Reg. 10(B)(2)(g) permits us to temper the sanction we impose for a lawyer’s dishonesty to a client and court upon proof that mental disability caused the misconduct, under some circumstances.” Id. at ¶ 19. Citing as a mitigating factor the attorney’s documented bipolar disorder and his willingness to commit to treatment, we imposed a two-year, fully stayed suspension on the condition that he continue his mental-health treatment and provide quarterly reports to relator during the stay. Id. at ¶ 20-21.
{¶ 26} Unlike Lowden, which involved two separate client matters, this is a case of a respondent’s first disciplinary action in an otherwise unblemished 30-year legal career, and it involves a single client matter. Moreover, as noted previously, respondent’s conduct was born of his extensive mental-health problems, and his reasoned and articulate presentation at oral argument persuaded this court that his expressions of remorse and contrition are genuine.
{¶ 27} Accordingly, we adopt the board’s findings of fact and misconduct but suspend respondent from the practice of law in Ohio for one year, with the entire suspension stayed on the conditions that he (1) serve one year of probation to be supervised by a monitor appointed by relator in accordance with Gov.Bar R. V(9), (2) limit his practice to domestic relations,, general litigation, and labor law (a condition imposed at his own request), (3) continue to follow the recommendations of his treating professionals, including ongoing pharmacological management by his treating physician, and (4) commit no further misconduct. If respondent fails to comply with these conditions, the stay will be lifted, and respondent will serve the entire one-year suspension. Costs are taxed to respondent.
Judgment accordingly.
Pfeifer, O’Donnell, and McGee Brown, JJ., concur.
*439 Lundberg Stratton, J., concurs separately.
O’Connor, C.J., and Lanzinger and Cupp, JJ., would order a two-year suspension from the practice of law, all stayed on conditions.

. It appears that respondent is also licensed to practice law in Kentucky.

. Relator charged respondent with misconduct under applicable rales for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. Disciplinary Counsel v. Freeman, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.