[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Chodosh,* Slip Opinion No. 2019-Ohio-765.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-765

COLUMBUS BAR ASSOCIATION *v.* CHODOSH.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Chodosh,* Slip Opinion No. 2019-Ohio-765.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed one-year suspension.*

(No. 2018-1094—Submitted January 9, 2019—Decided March 7, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-041.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Louis Jay Chodosh, of Columbus, Ohio, Attorney Registration No. 0005234, was admitted to the practice of law in Ohio in 1977.

**{¶ 2}** In a September 2017 complaint, relator, Columbus Bar Association, alleged that Chodosh violated multiple professional-conduct rules by failing to reasonably communicate with two personal-injury clients and by failing to properly

disclose to those clients his fee-sharing arrangement with attorneys outside his firm. Relator further alleged that Chodosh engaged in dishonest conduct by forging the signature of one of those clients on several legal documents and allowing one of those signatures to be falsely notarized, that he failed to properly execute a closing statement at the conclusion of that client's case, and that he revealed confidential information about the other client's representation without her consent.

{¶ 3} The parties entered into stipulations of fact and agreed that Chodosh committed some of the alleged misconduct, but they disputed one alleged rule violation and relator agreed to dismiss two others. They also stipulated to the relevant aggravating and mitigating factors and agreed that the appropriate sanction for Chodosh's misconduct is a stayed 12-month suspension. Based on those stipulations and the evidence adduced at a hearing, the board made findings of fact and conclusions of law and recommends that we suspend Chodosh for 12 months, all stayed on the conditions that he engage in no further misconduct and that he pay the costs of this proceeding. We accept the board's findings and agree that a conditionally stayed 12-month suspension is the appropriate sanction for Chodosh's misconduct.

**Misconduct**

*Count One: The Cline Matter*

{¶ 4} In October 2012, Patricia Cline caught the heel of her shoe on loose carpet and fell down a flight of stairs in a common area of the apartment building where she resided. In May 2013, an attorney at the Donahey Law Firm, L.L.C., referred her to Chodosh.

{¶ 5} After speaking with Cline at the end of May, Chodosh sent her several forms, which she completed and returned to him in early June. Among those forms was a power of attorney that purported to appoint Chodosh as Cline's attorney-in-fact to represent her in her case against the building's owner, Plaza Properties, Inc.,

2

and to receive checks on her behalf, but that document also expressly stated that Chodosh did not have the authority to cash those checks.

{¶ 6} Cline also signed a fee agreement in which she agreed to pay Chodosh a contingency fee of 33⅓ percent if her case settled before trial. The agreement further provided, "Client agrees that Donahey Law Office, Attorney, is co-counsel in this case and will receive 33⅓% of any fees collected." Chodosh verbally informed Cline that the firm would share his fee, but he never informed Cline in writing that each lawyer was assuming joint responsibility for the representation or that the division of fees would correspond to the proportion of the services each lawyer performed.

{¶ 7} In late July 2013, Chodosh asked Cline to complete a Proof of Representation form that would permit him to obtain information regarding her medical expenses from the Centers for Medicare & Medicaid Services. Cline signed the form on August 2, 2013, and returned it to Chodosh.

{¶ 8} After evaluating Cline's case, Chodosh concluded that Plaza Properties' liability was questionable and that Cline's preexisting medical conditions made it difficult to discern the value of her claim. In an effort to commence settlement negotiations, he submitted a settlement demand to Plaza Properties' insurer in late August 2014. The demand falsely stated that Cline had authorized Chodosh to make an initial settlement demand of $75,000; he had never discussed that amount with Cline, let alone obtained her consent to make that demand. The following month, Chodosh forwarded documents to the insurer showing that Medicare had been billed $9,307.26 for Cline's treatment and had paid $727.92, but the insurer later convinced him that Medicare had only a $5,621.70 lien. Without first discussing the issue with Cline, Chodosh told the insurer that he and Cline were willing to sign a "hold harmless" agreement stating that they would be responsible for any reimbursement to Medicare.

{¶ 9} In September 2014, approximately two weeks before the statute of limitations would have expired, Chodosh agreed to settle Cline's claims for $25,000 even though he had not yet received final communication from Medicare regarding the amount of its lien. The insurer issued two checks payable to "Patricia Cline and Chodosh & Chodosh, as Attorneys" and a release of claims for Cline to sign before a notary public. Chodosh signed Cline's name to both checks and deposited them into his client trust account. The parties stipulated and the board found that Chodosh signed Cline's name on the release, signed his own name as a witness to Cline's signature, and then directed his secretary to notarize Cline's signature on the release before returning it to the insurer—albeit with Cline's knowledge.[1]

{¶ 10} On October 2, 2014, Chodosh sent Cline a letter, an $11,000 client-trust-account check, and an unsigned settlement-distribution sheet. The settlement-distribution sheet identified distributions of $11,000 to Cline, $2,000 to the Donahey Law Firm (though there was no evidence that any attorney from that firm had performed any work on the case), and $4,000 to Chodosh as a reduced attorney fee. It stated that a reserve of $8,000 would be held in trust to satisfy an anticipated Medicare lien. The letter explained that if that lien was less than $8,000, the first $2,300 of any surplus would satisfy the remainder of Cline's 33⅓ percent attorney fee and that any remaining balance would be returned to Cline.

{¶ 11} Cline died in January 2018. At the time of the disciplinary hearing, Chodosh continued to hold the $8,000 allocated to satisfy the Medicare lien in his client-trust account. Chodosh testified that every three months, he asks Medicare to state the amount of its lien. He stated that once the lien is satisfied and the remainder of his fee is paid, any remaining funds will be paid to Cline's heirs.

---

1. Contrary to the stipulations and the board's findings, it appears that Chodosh's secretary signed the document as a witness and that Chodosh notarized Cline's purported signature.

4

{¶ 12} The parties stipulated and the board found that Chodosh's conduct violated Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by a client's decision whether to settle a matter), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client that details the calculation of the lawyer's compensation, any costs and expenses deducted from the judgment or settlement, and any division of fees with a lawyer not in the same firm), 1.5(e) (permitting attorneys who are not in the same firm to divide fees only if the fees division is reasonable and proportional to the work performed, the client consents to the arrangement in writing after full disclosure, and a written closing statement is prepared and signed by the client and each lawyer), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).[2]

*Count Two: The Jewell Matter*

{¶ 13} Karen Jewell slipped and fell at a restaurant in July 2013. Dissatisfied with the attorney she had initially retained to pursue her claim, she sought representation from the Law Offices of Kevin Kurgis, which referred her to Chodosh. On June 23, 2014, Jewell signed a contingent-fee agreement agreeing to pay Chodosh one-third of any pretrial recovery. That agreement also provided, "Client agrees that Kurgis & Assoc[iates], Attorney, is co-counsel in this case and will receive 33⅓% of any fees collected," but it did not state that each lawyer had assumed joint responsibility for the representation or that the fee division would be in proportion to the services performed by each lawyer.

{¶ 14} In investigating Jewell's case, Chodosh learned that the restaurant had no record of Jewell's fall. Jewell provided Chodosh with a statement from her

---

2. In accord with the parties' stipulations, the hearing panel unanimously dismissed one additional alleged violation with respect to both counts of the complaint.

mother, who had witnessed the incident. Chodosh submitted that statement to the restaurant and had Jewell provide a recorded statement to the adjuster for the restaurant's insurer. Thereafter, he concluded that settlement was unlikely, and believing that the case would need to be litigated, he "transferred" Jewell's case file to attorney Sanford Meizlish in November 2014, without Jewell's knowledge or consent. Meizlish, who was not a member of Chodosh's firm, copied the file and returned the original to Chodosh. Although Chodosh expected to retain a "fee interest" in Jewell's case, he did not discuss attorney fees or the terms of Jewell's representation with Meizlish.

**{¶ 15}** Jewell first learned that Chodosh had referred her case to Meizlish after Meizlish wrote to her in late November 2014 and asked her to call his office to schedule an appointment with him. In January 2015, Meizlish wrote to inform her that she needed to advance $750 for the costs of litigation if she wanted him to represent her. Having received no response from Jewell, Meizlish sent her another letter in early March 2015 to inform her that he was "closing his file."

**{¶ 16}** In late April 2015, Jewell wrote to Chodosh, inquiring about the status of her case. She stated that when she had spoken to him six weeks earlier, he told her that he was still representing her and that he would contact her about the status of her case in two weeks, but he had not called. Approximately two weeks later, without contacting Meizlish, Chodosh replied to Jewell, stating that Meizlish was continuing to work on Jewell's case. Jewell wrote to Chodosh again at the end of May to remind Chodosh that when they had last spoken, she told him that Meizlish was not representing her because she had declined to advance the costs of litigation and that Chodosh had agreed to continue representing her. Following a meeting with Jewell in early June, Chodosh wrote to inform her that he would not be taking any further action in her case.

**{¶ 17}** The parties stipulated and the board agreed that Chodosh violated Prof.Cond.R. 1.4(a)(3) and 1.5(e) in his handling of the Jewell matter. In addition,

6

the board found that he violated Prof.Cond.R. 1.6(a) (prohibiting a lawyer from revealing confidential client information without the client's informed consent) by revealing information regarding Jewell's case to Meizlish without Jewell's consent.

**Sanction**

{¶ 18} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 19} The sole aggravating factor present in this case is that Chodosh committed multiple offenses. *See* Gov.Bar R. V(13)(B)(4). Mitigating factors include the absence of prior discipline, the absence of a dishonest or selfish motive, Chodosh's full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings, five letters from colleagues and friends attesting to his good character and reputation, his acknowledgment of the wrongful nature of his conduct, and his expressed remorse. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5).

{¶ 20} The board recommends that we adopt the parties' stipulated sanction and impose a fully stayed 12-month suspension for Chodosh's misconduct with the addition of two conditions—that Chodosh engage in no further misconduct and pay the costs of the disciplinary proceedings.

{¶ 21} In support of its recommendation, the board noted that we have imposed fully stayed suspensions in cases involving isolated incidents of dishonesty and an abundance of mitigating evidence. For example, in *Akron Bar Assn. v. Gibson*, 128 Ohio St.3d 347, 2011-Ohio-628, 944 N.E.2d 228, we imposed a fully stayed one-year suspension on an attorney who made material misrepresentations of fact to a court in seeking payment for her nonlegal services and entered into a business transaction with a client without making certain required disclosures. Significant mitigating factors included the absence of prior discipline, a cooperative attitude toward the disciplinary proceedings, evidence of Gibson's

reputation for competence, honesty, and trustworthiness, and her history of substantial pro bono work. And in *Disciplinary Counsel v. Niermeyer*, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, we imposed a fully stayed one-year suspension on an attorney who filed a document with a falsified date stamp in an attempt to remedy his failure to meet a filing deadline. Mitigating factors in that case included the absence of prior discipline, Niermeyer's self-reporting of his own misconduct and full cooperation in the disciplinary process, and evidence of his good character and reputation.

{¶ 22} The board also noted that in several prior cases, we did not impose an actual suspension on a lawyer when the lawyer had on one occasion improperly notarized a signature that the lawyer had not witnessed or signed a client's name and then notarized that signature. *See, e.g.*, *Cleveland Bar Assn. v. Russell*, 114 Ohio St.3d 171, 2007-Ohio-3603, 870 N.E.2d 1164 (publicly reprimanding an attorney who notarized two deeds without having witnessed the grantor's signatures); *Disciplinary Counsel v. Mezacapa*, 101 Ohio St.3d 156, 2004-Ohio-302, 803 N.E.2d 397 (publicly reprimanding a lawyer who signed a client's name to a document and then notarized it).

{¶ 23} We find that the board's recommended sanction is also consistent with the sanctions we have imposed on attorneys who revealed confidential client information without their client's consent in violation of Prof.Cond.R. 1.6(a) as Chodosh did in the Jewell matter. In *Cleveland Metro. Bar Assn. v. Heben*, 150 Ohio St.3d 335, 2017-Ohio-6965, 81 N.E.3d 469, we imposed a fully stayed one-year suspension on an attorney who, in his motion to withdraw as counsel in a divorce case, revealed confidential information about his representation without his client's consent. Although we found that Heben had acted with a selfish motive and had refused to acknowledge the wrongful nature of his conduct, he had no prior disciplinary record, had made full and free disclosure to the board, and had displayed a cooperative attitude toward the disciplinary proceedings. He also had

submitted numerous letters attesting to his good character and reputation and did not appear to have prejudiced his client's case.

{¶ 24} And in *Disciplinary Counsel v. Holmes and Kerr*, __ Ohio St.3d __, 2018-Ohio-4308, __ N.E.3d __, two attorneys who were in a personal relationship shared confidential client information and documents with each other to facilitate the completion of one attorney's legal work—even though they were not employed by the same law firm and did not jointly represent any clients. Although Holmes and Kerr engaged in a pattern of improper disclosures over an almost two-year period, they had no prior discipline, had exhibited cooperative attitudes toward the disciplinary proceedings, and had presented evidence of good character and there was no evidence that any of their clients were harmed by their misconduct. Their conduct was also arguably less egregious than that of Heben because they did not disclose potentially damaging client information in a publicly filed document. On those facts, we agreed that a fully stayed six-month suspension was the appropriate sanction for each attorney.

{¶ 25} We adopt these findings of fact and agree that Chodosh has violated Prof.Cond.R. 1.2(a), 1.4(a)(3), 1.5(c)(2), 1.5(e), 1.6(a), and 8.4(c). Having considered the single aggravating factor and multiple mitigating factors present in this case and the sanctions imposed in the cases discussed above, we agree that the appropriate sanction in this case is a one-year suspension, stayed in its entirety on the conditions that Chodosh engage in no further misconduct and pay the costs of this proceeding.

{¶ 26} Accordingly, Louis Jay Chodosh is suspended from the practice of law in Ohio for one year, with the entire suspension stayed on the conditions that he commit no further misconduct and pay the costs of this proceeding. Costs are taxed to Chodosh.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., not participating.

_____

G. Michael Romanello; John C. Hartranft Sr.; and Kent R. Markus, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Kegler, Brown, Hill & Ritter, L.P.A., and Jonathan E. Coughlan, for respondent.

_____