**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Miller*, **Slip Opinion No. 2024-Ohio-4939.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4939

DISCIPLINARY COUNSEL *v.* MILLER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Miller*, Slip Opinion No. 2024-Ohio-4939.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Conditionally stayed one-year suspension.*

(No. 2024-1101—Submitted September 3, 2024—Decided October 16, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-043.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

**{¶ 1}** Respondent, Jeffrey Charles Miller, of Cleveland, Ohio, Attorney Registration No. 0068882, was admitted to the practice of law in Ohio in 1997.

**{¶ 2}** In a December 15, 2023 complaint, relator, disciplinary counsel, charged Miller with professional misconduct arising from his failure to communicate with a client and his false representation to a government agency that another partner in his firm was representing a client. The parties submitted stipulations of facts, misconduct, and aggravating and mitigating factors as well as stipulated exhibits and a recommended sanction.

**{¶ 3}** A panel of the Board of Professional Conduct found that Miller committed the charged misconduct and recommended that we suspend him from the practice of law for one year, with the suspension stayed on the conditions that Miller engage in no further misconduct and that for 36 months he submit to relator quarterly reports from a treating healthcare professional regarding his compliance with treatment recommendations. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. The parties jointly waived objections to the board's findings and its recommendations. *See* Gov.Bar R. V(17)(B)(3).

**{¶ 4}** After a thorough review of the record and our caselaw, we adopt the board's findings of misconduct and recommended sanction.

## I. MISCONDUCT

### A. Count 1—The Ferns Matter

**{¶ 5}** In 2020, Robert and Jennifer Ferns hired Mark Price to remodel their home. Price allegedly never performed any work despite receiving partial payment. The Fernses retained Miller, who sued Price on their behalf. Price filed an answer and counterclaim through his counsel, Gregory Beck.

**{¶ 6}** On October 26, 2021, without consulting his clients, Miller moved for a 60-day extension on all deadlines in the case. On November 10, the court granted the requested extensions and scheduled a jury trial for April 25, 2022. On January 10, 2022, Jennifer Ferns emailed Miller asking for an update on the case. Two weeks later, Miller replied that trial had been scheduled for February 22 and that he

believed that the court would continue the case. In a January 31 email, Miller informed Jennifer that the court had rescheduled the trial for the end of March. Miller later told Jennifer that the trial had actually been rescheduled for April. When he learned she had a conflict with the April trial date, he told her that he would "take care of it."

{¶ 7} On March 27, Beck contacted Miller, requesting a joint dismissal of the case without prejudice, and Miller agreed without giving the Fernses notice or obtaining their consent. Miller then drafted the joint dismissal, sent it to Beck for his approval, and filed it in the court. Miller subsequently told the Fernses that the case was on hold; he never disclosed that he had agreed to dismiss their case or that the case had been dismissed.

{¶ 8} The Fernses retained different attorneys, who filed suit against Price on February 20, 2024. Miller later entered an appearance on behalf of the Fernses, and the other attorneys withdrew. Miller is currently representing the Fernses in the ongoing litigation.

{¶ 9} The parties in this case stipulated and the board found that Miller's conduct violated Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to promptly inform a client of any decision or circumstance with respect to which the client's informed consent is required) and 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter). The panel unanimously dismissed charges alleging that Miller violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information). We adopt the board's findings of misconduct.

### B. Count 2—The Pratt Matter

{¶ 10} In February 2022, Alex Pratt hired Miller to sue a company for damaging his windows while his home was being built in Michigan. At Miller's request, Kathryn Hickner, an attorney licensed to practice in Michigan who worked at the same firm as Miller, filed the lawsuit since Miller is not licensed in Michigan.

{¶ 11} Pratt subsequently contacted Miller regarding a lawsuit the Michigan Liquor Control Commission had filed against Pratt's company, Good Boy Vodka, L.L.C. Miller sent the commission a letter requesting a copy of the violation report supporting its lawsuit. The commission then inquired whether Miller was licensed to practice in Michigan, explaining that it could release the report only to a Michigan-licensed attorney or an authorized signer for the company; Miller was neither. Miller directed his staff to send the commission a letter using Hickner's information and signature, without first obtaining her approval.

{¶ 12} Based on the letter, the commission entered a notice of appearance for Hickner as counsel for Good Boy Vodka. Prompted by the notice, Good Boy Vodka contacted Hickner to inform her that it was being represented by a different attorney. Miller's firm then discovered that he had used Hickner's information and signature without her permission.

{¶ 13} The parties stipulated and the board found that Miller's conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt the board's findings of misconduct.

### II. SANCTION

{¶ 14} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 15}** We have held that when an attorney engages in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation, "the attorney will be actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. But as we recently explained in *Mahoning Cty. Bar Assn. v. Macala*, 2024-Ohio-3158, "[w]e have tempered the presumptive sanction of an actual suspension for an attorney's dishonest conduct in two sets of circumstances. First, we have done so when an attorney has engaged in an isolated incident of dishonest conduct." *Id*. at ¶ 24. "Second, we have recognized that 'an abundance of mitigating evidence can justify a lesser sanction.' " *Id.* at ¶ 25, quoting *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8.

**{¶ 16}** The sole aggravating factor the board found in this case is that Miller committed multiple offenses. *See* Gov.Bar R. V(13)(B)(4). As for mitigating factors, the board found that four are present in this case: a clean disciplinary record, full and free disclosure to the board, evidence of good character or reputation, and the existence of a qualifying disorder of alcoholism in recovery. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (7).

**{¶ 17}** The board recommends that we suspend Miller for one year, with the suspension stayed on the conditions that Miller engage in no further misconduct and submit to relator for 36 months quarterly reports from a treating healthcare professional regarding his compliance with treatment recommendations. In determining an appropriate sanction to recommend for Miller's misconduct, the board compared this case to *Columbus Bar Assn. v. Chodosh*, 2019-Ohio-765; *Disciplinary Counsel v. Farris*, 2019-Ohio-4810; *Disciplinary Counsel v. Kendrick*, 2016-Ohio-5600; *Disciplinary Counsel v. Pfundstein*, 2010-Ohio-6150; and *Butler Cty. Bar Assn. v. Minamyer*, 2011-Ohio-3642. In each of those cases, this court imposed a one-year suspension, stayed on conditions.

**{¶ 18}** In *Chodosh*, the attorney failed to reasonably communicate with two clients and failed to properly disclose his fee-sharing arrangement to them. He also made a settlement demand without a client's knowledge or consent, forged that client's signature on several documents, directed his secretary to notarize one of those documents, and then submitted the forged and notarized document to an insurer. Lastly, he transferred a client's files to another attorney without the client's knowledge or consent. The only aggravating factor present was that Chodosh had committed multiple violations, while mitigating factors included his clean disciplinary record, the absence of a dishonest or selfish motive, his full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings, five letters from colleagues and friends attesting to his good character and reputation, his acknowledgment of the wrongful nature of his conduct, and his expressed remorse. *Id.* at ¶ 19.

**{¶ 19}** In *Farris*, the attorney neglected a client matter by failing to file a complaint with the Cuyahoga County Board of Revision, allowing the statutory deadline to pass. Farris then misled his clients to conceal his neglect. In determining Farris's sanction, we noted that he had committed multiple offenses and harmed his clients, but we recognized the isolated nature of his dishonest misconduct and that there was other mitigating evidence, including a clean disciplinary record, full and free disclosures to the board and a cooperative attitude toward the disciplinary proceedings, and evidence of good character and reputation. *Farris* at ¶ 11, 16.

**{¶ 20}** In *Kendrick*, 2016-Ohio-5600, the attorney neglected two client matters, failed to reasonably communicate with one client, and failed to deposit fee payments into the attorney's client trust account in both client matters. Kendrick's dishonest conduct consisted of a single incident in which she used money she had received in one client matter to pay another client's filing fee. The only aggravating factor present was that Kendrick had committed multiple violations, while

mitigating factors included her timely, good-faith effort to make restitution or to rectify the consequences of her misconduct, her full cooperation in the disciplinary proceedings, evidence of her good character and reputation, and the existence of a qualifying mental disorder. *Id.* at ¶ 10.

{¶ 21} In *Pfundstein*, 2010-Ohio-6150, the attorney failed to pursue the collection of a judgment over several years, failed to respond in a timely manner to the client, and misrepresented his efforts to collect on the judgment. In different litigation involving the same client, Pfundstein voluntarily dismissed the case without informing the client and lied to the client about its status. A pattern of misconduct and multiple offenses were aggravating factors. *Id.* at ¶ 15. As for mitigating factors, Pfundstein had no prior discipline, had cooperated in the disciplinary process, had displayed remorse, and suffered from depression, which we found had contributed to his misconduct. *Id.* at ¶ 16-17.

{¶ 22} Finally, in *Minamyer*, 2011-Ohio-3642, the attorney neglected his client's case by failing to submit a pretrial statement and failing to appear at a scheduled pretrial conference. The trial court then dismissed the case for want of prosecution, but Minamyer led his client to believe that the case was still pending. Multiple violations, harm to the client, failure to cooperate in the disciplinary proceedings, and deceitful conduct were aggravating factors. *Id.* at ¶ 11. On the other hand, we noted Minamyer's clean disciplinary record and the isolated nature of the misconduct. *See id.* at ¶ 23. We also took note of Minamyer's depression, posttraumatic stress disorder, and traumatic brain injury. *Id.* at ¶ 22, 24.

{¶ 23} We conclude that a one-year suspension, all stayed on conditions, is appropriate here. Miller failed to act diligently, failed to keep his clients informed of the status of their case, failed to consult with them about how their case should proceed, and deceitfully used another person's signature without her permission. This misconduct is similar to that in *Pfundstein* and *Chodosh*. In those cases, the attorneys failed to adequately communicate the status of cases with their clients,

and like Miller, Pfundstein dismissed his client's case without obtaining the client's consent. Chodosh's misconduct is particularly analogous to Miller's misconduct. Miller used another person's signature without permission; Chodosh forged a signature. Miller knew that a government agency would rely on the unauthorized signature; Chodosh submitted the forged signature to an insurer who relied on it. In both *Pfundstein* and *Chodosh*, we determined that the misconduct warranted a one-year suspension stayed on conditions.

{¶ 24} And like the attorney in *Kendrick*, Miller has submitted compelling mitigating evidence. Miller has an alcohol-use disorder for which he has entered into an Ohio Lawyers Assistance Program contract, and he has been receiving ongoing treatment since entering an intensive outpatient program on October 12, 2022. His attending physician since November 29, 2022, Joseph W. Janesz, Ph.D., submitted a letter stating that Miller had been severely dependent on alcohol and that his disorder had compromised his ability to function professionally. Dr. Janesz reports that Miller's recovery has been consistent and that he has demonstrated positive change in his life. As proof of Miller's good character and reputation, the panel received nine letters submitted on Miller's behalf by community members, friends, and fellow members of the bar that attest to his upstanding behavior and the effect that his disorder had had on his judgment and actions. Lastly, we note that in addition to the other mitigating factors present, Miller's dishonest misconduct was an isolated incident in an otherwise unblemished career.

{¶ 25} "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards*, 2012-Ohio-5643, ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 53. So, although the presumptive sanction for Miller's misconduct is an actual suspension from the practice of law, *see Fowerbaugh*, 1995-Ohio-261, at syllabus, we conclude that the isolated nature of Miller's dishonest conduct and the abundance of mitigating evidence militate in

favor of imposing a one-year suspension, all stayed on conditions. We therefore adopt the board's recommended sanction.

### III. CONCLUSION

{¶ 26} Accordingly, Jeffrey Charles Miller is suspended from the practice of law in Ohio for one year, with the entire suspension stayed on the conditions that he (1) engage in no further misconduct and (2) submit to relator quarterly reports from Dr. Janesz or another treating healthcare professional regarding Miller's compliance with treatment recommendations for the next 36 months. If Miller violates either condition of the stay, the stay will be lifted and he will serve the one-year suspension in its entirety. Costs are taxed to Miller.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Mongomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____